Oellrich *et al. vs.* The Georgia Railroad.

---

OELLRICH *et al. vs.* THE GEORGIA RAILROAD.

| 73 | 389 |
|----|-----|
| 98 | 468 |
| 73 | 389 |
| 100 | 793 |
| 73 | 389 |
| 109 | 655 |
| 73 | 389 |
| 130 | 478 |

1. Complaint for land was brought in the statutory form. Both parties claimed under the same grantor, the plaintiff holding a deed, defendants a bond for title. The deed to the plaintiff, which was attached to the declaration as an abstract of title, contained the following clause:

" This conveyance is also made subject to the rights of Henry Meyers, C. Herman Oellrich and Annie M. D. Oellrich, as holders of a bond for titles from said W. R. Walton, their heirs and assigns, conditioned upon the payment of six purchase money notes therein described, that said W. R. Walton would make, or cause to be made to them, titles to the premises therein and herein described, and said purchase money notes having been transferred by said Walton to said party of the second part, and said party of the second part, upon payment of said notes, obligating itself to make such conveyance to the holders of said bond for titles; and it is covenanted between the parties hereto that until such payment is made by the holders of said bond for titles, or their assigns, the legal and equitable title of said premises shall remain in said party of the second part, its successors and assigns :"

*Held*, that the declaration could be amended by alleging that the plaintiff claimed title as security for the indebtedness set up in the deed, and by praying that the verdict should be so moulded as to subject the premises described in the deed attached to the declaration to the payment of the note set out therein. Such an amendment, if necessary, was merely explanatory, and made clearer the cause of action. It added neither a new cause of action nor a new party.

(*a.*) A deed made to secure a debt passes title, so as to authorize a recovery of the land. The defendants could file an equitable plea, pay the purchase money, keep the land, and have the title decreed to them, but to do this, they must tender the purchase money. And so also a prayer for equity by the plaintiff is germane to an action of ejectment or complaint for land.

(*b.*) The cases in 59 *Ga.*, 355; 66 *Id.*, 148, 483; 67 *Id.*,84, 89; 19 *Id.*, 313; 60 *Id.*, 150; 53 *Id.*, 109; 51 *Id.*, 620, differ from the present case.

2. Where it was sought to obtain title to real estate free from an encumbrance, which was known by the purchasers to be resting

thereon, and in order to do so, it was necessary to raise a sum of money by discounting the notes of the purchasers given for the land, and where a deed was made and a mortgage given to secure the purchase money, but it was discovered that the money could not be raised thereon, and thereupon, within a few days, the deed and mortgage were cancelled, a deed was made to a third party to secure an advance of the money, and a bond for title was given to the purchasers, and where these negotiations were conducted on the part of the purchasers by one of them for himself, and as agent for the others, and the object of his agency was the negotiation for the land and obtaining a clear title thereto :

*Held*, that such agency, being for the negotiation for the land and obtaining a title, need not have been in writing, as would have been the case with an agency to make a conveyance. And, therefore, the court did not err in submitting the question of agency by parol, and its continuance to the consummation of a trade and the procurement of a clear title, to the jury, on the facts.

(*a.*) The verdict was right under the facts.

(*b.*) All the evidence explanatory of the entire trade between the vendor and the purchasers was admissible and necessary to elucidate the question of title, the character of title each had, and the extent of the agency of one of the co-tenants for the others.

(*c.*) The record in an equity case about waste could not elucidate the issues in the present case, so far as the record in this court shows, and was properly rejected.

3. In an action of ejectment or complaint for land based on a deed held by the grantee to secure a debt, the equitable rights of the parties might be adjudged, on proper pleadings at the instance of the plaintiff, as well as at that of the defendants; especially where the plaintiff offers terms easier for the defendants than they themselves could set up by equitable plea.

(*a.*) The distinction between equitable and legal powers is very slight, under the Code of this state.

(*b.*) The holder of the deed to secure a debt which it discounted for the grantor, in order that he might consummate the trade with his purchasers and make them a clear title when the purchase money was paid, was subrogated to the rights of the grantor, and could recover the land in ejectment; and if the verdict and judgment were so moulded as not to eject the purchasers entirely, but to have the land sold, the debt for it paid, and the balance of the proceeds, if any, paid to them, this could legally be done, and was beneficial to the defendants, rather than adverse to them.

February 7, 1885.

Ejectment. Amendment. Title. Deeds. Principal and Agent. Evidence. Equity. Equitable Pleadings.

Debtor and Creditor.   Before Judge RONEY.   Richmond Superior Court.   October Adjourned Term, 1883.

The Georgia Railroad brought complaint for land against Oellrich *et al.* Subsequently the declaration was amended by praying that the land be sold, the debt for the purchase money thereof be paid, and the balance, if any, be paid to the defendants.

It is unnecessary to detail the evidence further than to state that the following appeared: The defendants, Oellrich, his wife, and one Meyer purchased the land from W. R. Walton, Oellrich acting as agent for the other two.   At the time, the title was in the Commercial Bank to secure a debt due to it, and this fact was mentioned, but it was the intention that Walton would be able to raise the money to pay this debt by discounting defendants' notes and free the title from the encumbrance.   At first, Walton made a deed to them and took a mortgage to secure the money, but finding that the funds to pay off the bank could not be so raised, but could be raised by giving a deed, Oellrich returned the deed, and it and the mortgage were cancelled.   Walton then gave a bond for titles to defendants, made a deed to the plaintiff containing the clause set out in the decision, making it subject to the bond for titles, and thus raised the money to pay the bank.

There was some conflict as to whether the wife of Oellrich was present during the negotiations to change the papers, and as to the authority of Oellrich.   He claimed that he did not wish to make the change, but took the bond because Walton would not let him take the deed, he having left it at the office of one Harper, an attorney who had taken part in the transaction of the business.   This was denied by Harper, and it was shown that the defendants had held the place under the contract of purchase as last made.   The railroad authorities testified that they knew nothing of these matters when they discounted the notes and took the deed.   Only $300.00 was paid on the

purchase money. The bond specified that if there was a default in paying any one of the notes for thirty-five days after it fell due, all the notes should become due. Oellrich testified that Walton offered to let him have two mules as an inducement to change the paper.

The jury found that the land should be sold to pay the plaintiff, unless the debt was paid in ninety days. Defendants excepted. For the other facts see the decision.

THOS. S. BEAN; HOOK & MONTGOMERY, for plaintiff in error.

Jos. B. CUMMING, for defendant.

JACKSON, Chief Justice.

This is an action for a tract of land brought in the statutory form by the Georgia Railroad & Banking Company against Oellrich, his wife and father-in-law. The plaintiff recovered in the form of a judgment founded on the verdict of the jury, that the land be sold, the plaintiff recover a debt for purchase money out of the proceeds of the sale, and the balance of the money, if any, be paid to the defendants. No motion was made for a new trial, but the bill of exceptions brings the case before us on errors of law alleged to have been made by the court.

Two errors of law are mainly relied on by the plaintiffs in error, and on the points made by them the case turns.

1. It is contended, first, that the court erred in allowing the defendant in error to amend his action by adding thereto an allegation that the plaintiff " claims title as security for the indebtedness set up in the deed," and a prayer that " the verdict to be rendered be so moulded as to subject the premises described in the deed, which is annexed to and a part of this declaration, to the payment of the notes set out in said deed." The abstract of the plaintiff's title appended to the complaint contains the

deed on which plaintiff relies for recovery, and in the deed are these words:

"This conveyance is also made subject to the rights of Henry Meyer, C. Herman Oellrich and Annie M. D. Oellrich, as holders of a bond for titles from said William R. Walton, their heirs and assigns, conditioned upon the payment of six purchase money notes therein described, that said William R. Walton would make, or cause to be made, to them titles to the premises therein or herein described, and said purchase money notes having been transferred to said party of the second part "—the plaintiff— " and said party of the second part, upon payment of said notes, obligates itself to make such con-veyance to the holders of said bond for titles; and it is covenanted between the parties hereto that, until such payment is made by the holders of said bond for titles, their heirs or assigns, the legal and equitable title to said premises shall remain in the party of the second part, its successors or assigns."

The plaintiffs in error insist that the amendment explanatory of the above clause of the deed introduces a new cause of action, with the prayer therein for the moulding the verdict so as to secure the said purchase money; and this makes the first question to be determined, and a new and interesting question it is, under the facts disclosed by the record. Both parties hold under the same grantor, William R. Walton. The railroad company holds under the deed which conveyed title to it to secure the payment of the notes given by the defendants below for the land; and those defendants hold under a bond for titles when the land is paid for, as the trade with the grantor was finally consummated. To that consummation, however, defendants object, so far as two of them are concerned, and insist that a deed was first executed to them all and was afterwards changed by Oellrich, when his agency had ceased, to the bond for titles only, a mere mortgage to secure the purchase money having been first executed by them. That point will be considered hereafter. The question now being considered relates to the amendment.

Under the Code, section 3389, this action of complaint for land is formulated, and it simply requires that the plaintiff allege that the defendants are in possession of

land to which plaintiff claims title; that defendants refuse to deliver possession and pay mere profits; and then concluded with a prayer for process. Under section 3401, the plaintiff is required to annex the abstract of title on which he relies. It is made imperative that he do this, the language of the section being that, "to the declaration prescribed by this Code for the recovery of land and mesne profits, the plaintiff shall annex an abstract of the title relied on for such recovery."

So that this abstract of title is a necessary part of the declaration; like an exhibit to a bill or the copy of the promissory note, or bill of particulars of an account sued on. The complaint, therefore, as originally brought, is that plaintiff claims title to secure payment of the notes due for the land by the defendants; and that its title thereto was given by Walton as security for that debt. In this view of the original declaration, construed in connection with the annexed abstract of title, it seems clear that the suit is for the possession of the land in order to pay these purchase money notes. By the deed the rights of the defendants under their bond for titles are secured. What are those rights? To have a deed executed to them when the land is paid for as the notes fall due under the contract. It appears in evidence that only three hundred dollars has been paid out of fifty-five hundred to be paid, and that all fell due when one remained thirty days unpaid. Surely the plaintiff may collect these purchase money notes out of this land or eject the defendants, and it appears from the declaration, this abstract of title, that its purpose in suing for the land was to subject it to the purchase money notes which it had discounted for the common grantor.

The conclusion is that the amendment was scarcely necessary. At all events, it is merely explanatory and makes clearer the cause of action. It adds no new cause of action and no new party.

That title to real estate passes, so as to authorize a recovery of the land, when the title is only to secure a debt,

see 54 *Ga.*, 45, and *Biggers vs. Bird et al.*, 55 *Id.*, 650, where it is more clearly ruled. See also to the same point, 57 *Ga.*, 601; 59 *Id.*, 507; 60 *Id.*, 562, and following cases. So that the plaintiff's right was to recover the land.

What is the correlative right of the defendants? The same cases, some of them (54 *Ga.*, 45, and others), as clearly rule that they may file an equitable plea to the action for the possession of the land, pay the purchase money and keep the land, having the title decreed to them; and to do this they must tender the purchase money. The defendants in this case had this right, and could have filed their plea to save the land by paying the purchase money. The Railroad Company, standing in the shoes of Walton, defendants' grantor, having paid the money for the land which defendants owed, by discounting their notes, simply asked, instead of recovering possession of the land, subject to a suit from the defendants to convey to them, if they could ask it in default of payment as stipulated, that the court at once mould a verdict to settle these equities between itself and them. If the defendants could make such a defence and have equity done, why might not the plaintiff, suing for land in order to secure a debt, do the same thing? If the defence, with a prayer for equity, be germane to an action of ejectment or complaint for land, why may not the plaintiff's prayer for equity be also germane to the suit for land?

It is on our Code that Judge Warner rested this right at law in the defendant in 54 *Ga.*, 45, and the same Code is equally applicable to the plaintiff. It is to the effect that no party need go into a court of equity, but may have relief moulded at law in equitable cases.

But be this as it may, the result of the case and the advantage given defendants by the invocation of equitable principles on the part of plaintiff, certainly did not damage them. If they had invoked equity, they must have tendered the purchase money; whereas, by the verdict and judgment made under plaintiff's pleadings, they will get,

without paying anything in advance, all that the land is worth after paying out of its proceeds what they agreed to pay.

The ruling of this court on the amendment is, that it is substantially the case originally sued on; that it is no new cause of action, and was properly allowed as making clearer the original pleading, and that a plaintiff in ejectment, suing in the statutory form for land as security for the purchase money, may have a verdict and judgment at law so moulded as to do equity, the more especially when the equity given defendants is larger and more liberal than they themselves could have set up by plea.

The cases cited by plaintiffs in error, in 59 *Ga.*, 355; 66 *Id.*, 148; 67 *Id.*, 84, 89; 19 *Id.*, 313; 60 *Id.*, 150; 66 *Id.*, 483; 53 *Id.*, 109; 51 *Id*, 620, are unlike this at bar. By virtue of plaintiff's deed in the abstract of title annexed to the complaint, it sues on a title as security for a debt, and without particularizing, wherein in other respects they differ, that fact alone is sufficient to take this case without the ruling in them, and to show that this amendment only makes the original suit plainer.

2. But defendants, plaintiffs in error here, insist that Walton made at first a deed to them, and that this deed was afterwards surrendered with their mortgage for purchase money; and the wife and father-in-law of Oellrich assert and claim that Oellrich's agency had ceased when this arrangement was made; and further, it is insisted by counsel that to change this first arrangement required authority in writing from them to Oellrich.

It should be borne in mind that, pending the negotiations between Oellrich and Walton, through Harper, the fact was brought out and well known to the former, that the title to the land was in the Commercial Bank to secure a debt to it, or there was an incumbrance upon it for some twenty-five hundred dollars due that bank, and that before defendants could get a title to the land, that sum had to be raised by discounting their notes for the land to raise that

money. So that, when it was ascertained that, upon the deed to defendants and their mortgage, executed some three or four days before, the money could not be raised to remove this encumbrance, the plan was changed, and the bond for titles on payment of purchase money was given them by Walton, and the former deed and mortgage cancelled. It is in this transaction that plaintiffs in error deny Oellrich's agency, and insist that the authority should have been in writing. But no title or conveyance was to be made by Oellrich. He was still trying to get a clean title, free from encumbrance of the bank, and that he could not get for himself and his co-tenants without the cancellation of the deed and mortgage and the substitution therefor of the bond for titles. All transpired within a few days, and it would be strange if an agency to buy and get good title to a piece of land should terminate before the object of the agency, to-wit, negotiation for the land and clear title thereto, had been accomplished; and that was not accomplished until the papers were so made as to get the notes discounted and pay the Commercial Bank, which held the title encumbering the land. Power to negotiate for land and get title need not be in writing. Power to convey must be. This is an agency to buy, not to convey. The court was right in so ruling, and in submitting the question of the agency by parol, and its continuance to the consummation of the trade, and the procurement of a clean title, to the jury on the facts; and the conclusion to which the jury came, in our judgment, on the point, from the evidence, is right. Oellrich paid the three hundred dollars to the defendant in error; he importuned the defendant in error to renew the notes, when they fell due, and acted as agent after the bond for titles was made. One note was signed by the father-in-law after the bond for titles was executed, and it is manifest that Oellrich was agent, and so acted.

These are the controlling points in this case. Others in reference to the admission of evidence, and the exceptions

to the charge and refusals to charge, depend mainly upon the true meaning of the complaint and abstract of title of the defendant in error, and the point whether a new cause of action was introduced by the amendment, and upon this question of agency. The admissibility of all the evidence explanatory of the entire trade between Walton and the plaintiffs in error, it is clear to us, was right, as necessary to elucidate the question of title between the contestants and the sort of title each had and the extent of the agency of one of the co-tenants for the others.

We do not see how an equity case about waste could elucidate these issues, and we see no error in its rejection as evidence in this action. The record shows no legal bearing that the equity cause could have on this, in the very meagre allusion therein to its nature and scope, for it is not exhibited in the record or set out with any fullness.

The notes all fell due by the contract when any one was not paid, and the makers were in default thirty days, and the verdict and judgment are right.

3. The only question of doubt in the case—because it is a new question, in complaint to recover real estate—is, whether the jury could find, and the court decree or adjudge the equitable rights of the parties, at the instance of the plaintiff, in the action of ejectment or complaint for land. That it can be done at the instance of the defendants has been decided time and again by this court. Why not at that of the plaintiff, we cannot see, especially when the plaintiff offers it on terms easier for the defendants, in that they must tender the purchase money before they themselves can set up equities against the plaintiff. Certainly they cannot justly complain.

The conclusion we reach is, that the Georgia Railroad, having title from Walton to secure a debt which it discounted for him, in order that he might consummate the trade with defendants, and make them a clear title when the purchase money was paid according to the contract,

stands in the shoes of Walton, the grantor of defendants; and it can recover this land in ejectment; and that, if the jury and court moulded a verdict and judgment, not ejecting them entirely, but requiring the land sold and their debt for it paid first to the railroad company and balance, if any, to them, they had the legal right to do so under our law, and such action was beneficial to the defendants, rather than adverse to them. Indeed, the distinction between equitable and legal powers is very slight under our Code (see *Glover vs. Stamps* and *Austell vs. Swann*, this term); and any party in the legal forum should, if a judgment can be so moulded, have equitable relief administered there. Indeed, our statute law declares that "no suitor is compelled to appear on the equity side of the court; but he may institute his proceeding for an equitable cause of action upon the common law side of the court, at his option, and the court may allow the jury to find a verdict, and a judgment be rendered thereon, so moulded and framed as to give equitable relief in the case, as verdicts and decrees are rendered and framed in equity proceeding." Code, §3082; Cobb's Dig., p. 564. And section 3562 of the Code declares also that "it shall be within the power of the superior court, in proper case, to mould the verdict at law so as to do full justice to the parties, and in the same manner as a decree in equity, and the judgment and execution shall conform to the verdict." And section 4213 declares that "a court of equity has full power to mould its decrees so as to meet the exigencies of each case, and shall have full power to enforce its decrees when rendered." Thus the superior court is authorized by statute, in a proper case, to have the jury so mould a verdict as to do justice to the parties in the same manner as a decree in equity; and when we look to ascertain what the equity court may do by decree, we find that our statute law declares that it may mould a decree so as to meet the exigencies of the case,—of each case.

If there ever was one where this large power should

have. been applied, it is the case at bar.  People are in possession of land for which they have not paid ; they enjoy its rents, issues and profits ; they will neither deliver up the land nor pay for it ; without paying or offering to pay but a trifle, they skirmish and ambush to avoid a square contest, with the purpose apparently of keeping both the land and the money of the Georgia Railroad & Banking Company, which paid for it to give them the opportunity to procure an unencumbered title, and a court of justice is asked gravely to permit them to carry on the guerrilla war. To meet the exigencies of the case—so proper a case for its exercise of the power—the court of law of Richmond county has so conducted the proceedings as to result in the jury moulding a verdict, and the court a judgment, eminently just and equitable.  In the many errors assigned, we discover none so material—if any at all—as to require this court of errors to disturb that verdict and judgment.

Judgment affirmed.