### DUNSON *et al. v.* LEWIS *et al.*

1. When a vendee in a bond for title, in which the vendor obligates himself to convey to the vendee certain land upon the payment of the purchase-money, assigns the bond for title to another who agrees to assume and pay such purchase-money, and where this assignee transfers the bond for title to still another who does not assume the payment of the purchase-money and where the vendee is afterwards compelled to pay to the vendor the purchase-money, and takes from the vendor a deed of conveyance, with the agreement between him

and the vendor that he shall be subrogated to all the rights of the vendor in the premises, the vendee may call upon the last assignee to pay the purchase-money, or surrender the land, or have it sold to satisfy the purchase-money debt. The payment in full of the purchase-money by the vendee, under the above circumstances, gives him a perfect equity in the land; but such payment does not create a perfect equity in said assignee, and does not entitle him to a deed of conveyance from the obligor.

2. Upon the failure of the assignee of the bond for title to pay the purchase-money, the vendor may sue to recover the land, or he may sue the purchase-money notes to judgment, file a deed, have it recorded, and have the land levied upon and sold, or, in case of the assignment of his bond for title by the vendee, he may call upon the assignee to pay the purchase-money or surrender the land, or he may have the land sold to satisfy the debt. If the vendor conveys by deed the land to his vendee, the latter having previously assigned his bond for title to another who has agreed to pay the purchase-money, but who, without having paid the purchase-money, has transferred the bond for title to still another who has not agreed to pay the purchase-money, the vendee under such deed would stand in the shoes of the vendor, and would be entitled to all the rights of the vendor in the premises.

3. Where the vendee, after obtaining a deed from his vendor under the circumstances above narrated, instituted his complaint against the last assignee of the bond for title, to recover the premises embraced therein, and where such assignee in his answer to such complaint alleged that the vendee had paid the purchase-money in full, thus creating a perfect equity in his favor, and that such payment entitled him to a deed from the vendor, and prayed for specific performance against the vendor and cancellation of the vendor's deed to the vendee, an amendment by the plaintiff to his complaint, alleging sufficient facts, which sought to have the land sold and the proceeds applied to the payment of the purchase-money, and, after paying the expenses and costs of the proceedings, the balance paid to such assignee, was properly allowed over the objection that it set up no cause of action, and that, if it did, it set up a new cause of action; although such an amendment was offered after the defendants had stricken the prayers for specific performance and cancellation from their answer.

4. Applying the above principles, the court did not err in any of the rulings upon which error is assigned.

No. 3784. OCTOBER 13, 1923.

Complaint for land. Before Judge J. B. Jones. Habersham superior court. March 7, 1923.

J. A. Lewis brought his complaint against A. L. Kimsey, W. J. Dunson, and F. A. Baker, to recover a certain storehouse and lot in the Town of Turnerville, Habersham County, Georgia. He alleged that on Feb. 17, 1919, he went into possession of said prop-

erty under a bond for title from W. E. Black, and held possession until the defendants adversely claimed title and possession thereof. On July 19, 1921, Black, in compliance with his bond for title, executed and delivered to him a warranty deed to said premises. On June 25, 1921, the defendants entered upon said premises and forcibly took possession thereof against his will, and have received the rents thereof of the yearly value of $250. He prayed for recovery of possession of said premises and the rents thereof. In their answer defendants admitted they were in possession of the premises in dispute, Baker being in possession as tenant of the other defendants. They alleged that their possession is bona fide under a bond for title executed by Black to plaintiff, with the purchase-money paid, and said bond properly transferred by different assignments conveying all the right and title of the plaintiff to said premises. They denied that plaintiff had title, and that Black had any right to convey the premises to him. They alleged that on April 8, 1921, they purchased from W. E. Tolbert said bond for title for a consideration of $700, which was paid; whereupon Tolbert transferred to them said bond for title with all his interest, right, and title to said property. Defendants made no contract with Tolbert or any one else to pay the balance due on said property. Dunson and Kimsey further alleged that the plaintiff, on June 9, 1919, assigned said bond for title to Mrs. S. L. Baker in consideration that she assume the payment of the balance of the purchase-money, that she became debtor to the plaintiff, and plaintiff had no further interest in said land because he had transferred said bond for title to her. Mrs. Baker assigned the bond for title to J. S. Jackson, who agreed to pay the purchase-money and became obligated to the plaintiff to pay the balance thereof. This transfer was made on June 9, 1919. On Aug. 13, 1920, Jackson assigned the bond for title to Tolbert, obligating Tolbert to pay two notes for $150 each and interest, and this obligated Tolbert to pay the balance of the purchase-money. On April 8, 1921, for a consideration of $700, Tolbert transferred all his right, title, and interest in said bond to these defendants, and directed that a deed be made to them whenever the bond was complied with. Said assignment transferred the property described therein to these defendants. The $700 paid for the bond and property was all these defendants were to pay, and they made no contract with Tolbert to

pay the balance of the purchase-money, if any, but a deed was to be made to them as soon as the balance of said purchase-money was paid. All of said purchase-money has been paid, and the maker of the bond for title is bound by its terms to execute good and sufficient title to the holder and owner by assignment thereof. They demanded a deed of Black in accordance with said bond after the purchase-money was paid and before he executed the deed to plaintiff. They prayed that Black be made a party to the case, and that he be compelled by decree of the court to execute a deed of conveyance to them, and that the deed made by. Black to the plaintiff be canceled.

The plaintiff demurred to the answer, on the grounds: (1) that the defendants are not entitled to the equitable relief prayed; (2) that they invoke but do not offer to do equity; (3) that they do not offer to put plaintiff in statu quo; (4) that no cause of action is set forth therein. Black, who was made a defendant, joined in the demurrer.

On March 5, 1923, by an amendment the defendants struck the prayer of their answer for specific performance and cancellation. On March 6, 1923, plaintiff amended his petition and alleged as follows: The defendants are not subject to the obligations embraced in the contract between plaintiff and Black. They come into court asking that Black be required to specifically perform certain obligations which they claim under the assignment of the bond for title from Black to plaintiff. Plaintiff, having purchased all the equity, right, and title of Black to the premises described in said bond for title, is in privy with said Black and stands in his place as to the assignees of said bond; and in view of such relationship he elects to sue for the recovery of the balance of the purchase-money outstanding and due by said Kimsey and Dunson as assignees of said bond. On Feb. 17, 1919, he purchased from Black the premises in dispute. He paid Black $300 in cash and gave Black his two notes for $150 each, both dated Feb. 17, 1919, one being due Feb. 17, 1920 and the other Feb. 17, 1921, with interest from date at 8 per cent. per annum. Black executed and delivered to him a bond for title, conditioned upon the payment of said notes, Black to make him a deed with good and sufficient title to said premises. On June 9, 1919, he transferred all his interest in said bond, being at that time an equitable one to the extent of

$300, to Mrs. S. L. Baker, who assumed the payment of the balance of the purchase-money thereof; and he directed Black to make to her title when she paid the same. This she failed to .do. Learning that Kimsey and Dunson claimed to have possession of said bond, he advised Dunson there was an outstanding indebtedness of $300 and interest due on the balance of the purchase-money to Black on said property, which should be paid by them. Dunson told him, that, although he and Kimsey held said bond for title, they did not intend to put any more money in said property by paying the balance of the purchase-money due Black, and, acting for himself and Kimsey, refused to pay the same. He then advised Black of the attitude of Kimsey and Dunson, when Black demand· ed of him payment of his notes given for said purchase-money. He declined to pay it, and advised Black to bring.suit and subject the property to the payment of said balance. Black then proposed to plaintiff that he would turn over to him his outstanding purchase money notes with the indorsement of Black thereon, and would make to plaintiff a warranty deed to the premises if plaintiff would pay the amount due on said purchase-money notes. Having an interest to protect, and with the distinct agreement that he was to be subrogated to all the rights and title of Black upon Black delivering to him the two notes with a warranty deed to him, he paid Black the sum of $358, covering principal and interest due upon said notes, and Black then turned over to him the two purchase-money notes with Black's indorsement thereon, and Black executed and delivered to him a warranty deed to the premises in dispute. This transaction took place on July 19, 1921. At the time of making the transfer of the bond for title to Mrs. Baker on June 9, 1919, there had been paid only the sum of $300 on the purchase-money of said premises, and at the time he paid to Black, on July 19, 1921, the balance due on said purchase-money, that was all that had ever been paid. If Kimsey and Dunson have any equity in said property, it is by virtue of the original $300 which was paid at the time said bond was made, and this was the only equity which passed to Mrs. Baker. If Kimsey and Dunson bona fide claim said bond by virtue of a valid assignment, they should pay him, with 8 per cent. interest from July 19, 1921, said sum of $358 which he paid to Black in discharge of the balance of said purchase-money. He stands ready and willing and able in place of Black to execute

and deliver to them a good and sufficient warranty deed to said premises upon their payment to him of said sum. He is entitled to be subrogated to all the rights, equities, and title of Black at the time the purchase-money notes were indorsed and transferred to him, together with Black's deed. Kimsey and Dunson are not entitled to specific performance at the hands of Black or himself until they have paid the balance of the purchase-money due Black at the time the bond for title was transferred to them. Relying upon the statement of Kimsey and Dunson that they did not intend to claim any further interest in the property, he paid the balance of said purchase-money and took title to the property, which he would not have done had it not been for such representation; for which reasons they are equitably estopped from claiming any interest adverse to his title. Said Tolbert and Jackson, intermediate transferees, are non-residents of this State. Plaintiff stands ready to make Kimsey and Dunson title to said property upon their paying the balance of the purchase-money due. Plaintiff prayed that he be declared in equity and law to be subrogated to all the rights, title, and equities existing in said Black at the time of making the agreement of subrogation, and that he be declared to have the first lien upon said property in the nature of a purchase-money lien; that under said decree said property be sold by the sheriff of said county in conformity with the rules respecting sheriffs' sales, and from the proceeds there be paid to him a sum sufficient to pay the balance of the purchase-money paid by him; that the costs of this proceeding be paid, and the balance of the money be paid over to Kimsey and Dunson; that, if it should be held that he is not entitled to be subrogated as aforesaid, Kimsey and Dunson be held to be estopped by their conduct and bad faith in said transaction from asserting or claiming any title, interest, or equity against plaintiff unless they pay him the amount of the purchase-money and interest he paid Black on the last two outstanding purchase-money notes; and that they be denied specific performance and the cancellation of the deed from Black to plaintiff, unless they offer to perform all the equitable obligations resting upon them under their election to enforce the contract set forth in the bond for title.

To the allowance of this amendment defendants objected on the ground that it set up no cause of action, but, if so, it was a new

cause of action; that these defendants for a valuable consideration and by different assignments become the assignees of said bond for title and the owners of said premises, and having made no agreement with plaintiff, Black, or any one else for the payment of the balance of the purchase-money, said amendment sets up no cause of action and no right of subrogation in favor of plaintiff. The court overruled these objections, and error was assigned.

On the trial the plaintiff offered in evidence a deed from Black to him to the premises in dispute, and the two notes given by him to Black for the balance of the purchase-money due on the same, with Black's indorsement thereon. Defendants objected to the introduction of said deed, on the grounds, (1) that Black, having received all the balance of the purchase-money, should have made the deed to the assignees of the bond for title, and it was illegal to make it to any one else, and therefore it was void; (2) that by operation of law the equitable title vested in these defendants the moment the balance of the purchase-money was paid to the vendor, and said deed having been made afterwards when Black had no further interest in the premises and long after plaintiff, the vendee, had parted with all interest in the land, said deed could not convey title to the plaintiff. To the introduction of said notes defendants objected on the grounds, (1) that nothing in the case connected defendants with them; (2) that the assignment of the bond for title to these defendants contains no contract to pay said notes, nor was it pleaded by plaintiff that defendants assumed payment thereof; and (3) that the pleadings of plaintiff and Black show that the notes had been paid off, because plaintiff was bound to pay them, and could not use them with said deed as the basis of subrogation. The court overruled these objections and admitted said documents; and error is assigned thereon.

The case laid by the plaintiff in his petition as amended was proved. The defendants testified that they did not agree to assume the payment of the balance of the purchase-money due Black when the bond for title was transferred to them. They introduced in evidence the bond for title from Black to plaintiff, with the assignments thereon, including the assignment by J. A. Lewis to Mrs. S. L. Baker, dated June 9, 1919, under which she assumed the balance of the purchase-money; the assignment of the bond by Mrs. Baker to J. S. Jackson on June 9, 1919, in which Jackson

assumed the payment of the purchase-money notes; the assignment
of Jackson to W. E. Tolbert on Aug. 13, 1920, in which Tolbert
assumed payment of the balance of the purchase-money; and the
assignment of Tolbert to Dunson and Kimsey on April 8, 1921, as
follows: " For value I hereby transfer all interest, rights, and titles
to the within bond for title and to the property herein described
to W. J. Dunson and A. L. Kimsey, and direct that when the
conditions of the bond are complied with that a deed be made to
W. J. Dunson and A. L. Kimsey. This April 8, 1921," the transfer
being duly witnessed.

At the conclusion of the evidence the court directed a verdict
in favor of the plaintiff for the sum of $300 principal, $121.32
interest to March 7, 1923, and further interest at the rate of 8 per
cent. per annum; and finding that the plaintiff has a first purchase-
money lien upon the premises in dispute, describing the same; that
plaintiff, by reason of having paid the balance of the outstanding
purchase-money to the vendor under an agreement between the
vendor and him, is subrogated to all the rights, equities, and title
of the vendor, that the premises be sold by the sheriff after due and
legal advertisement, and that from the proceeds of the sale the
plaintiff be paid the amount of the principal and interest paid by
him to discharge the balance of the purchase-money of the premises,
that the costs of the proceeding be paid therefrom, and the balance,
if any, be paid to the defendants, Dunson and Kimsey; and that
if these defendants, before the sale, pay to the plaintiff the full
amount of the principal and interest due him, together with all
costs of this proceeding, then this verdict is to be null and void,
and that the plaintiff execute to Dunson and Kimsey a good and
sufficient deed to the premises upon their complying with the above
condition.   To this direction of a verdict the defendants excepted
on the grounds: (1) that it is contrary to law and not authorized
by the pleadings or the evidence; (2) that the plaintiff does not
allege and show that he is entitled to be subrogated to the rights
of his vendor, and admits in his amended pleadings that the de-
fendants are not subject to the obligations embraced in the bond
for title, but bases his right to recovery on subrogation because the
defendants were asking for equitable relief, when these defendants
by an amendment to their answer had withdrawn their prayer for
such relief; (3) that for one to pay his own debt he is not entitled

to subrogation; (4) that the amendment to plaintiff's petition does not set up a cause of action, for the reason that defendants are not seeking equitable relief; (5) that there are no pleadings to support said verdict; (6) that the cause of action set up in said amendment is a new cause of action; (7) that no relation either by contract or implication is distinctly set up by plaintiff, in his pleadings, with Black or these defendants; and (8) that the verdict should have been directed in favor of these defendants.

A decree was rendered in accordance with the above verdict; to which decree the defendants excepted upon the ground that the same is not authorized by law, the pleadings or the evidence in said case, because the same is contrary to law and the pleadings, and is not authorized, for the several assignments of error made to the direction of the verdict by the court.

*J. J. & Sam Kimzey,* for plaintiffs in error.

*J. C. Edwards, H. E. Edwards,* and *John E. Frankum,* contra.

HINES, J. (After stating the foregoing facts.)

1. When land is sold and a portion of the purchase-money is paid by the vendee, and when the vendor delivers to the vendee a bond for title conditioned to make title upon the payment of the balance of the purchase-money, both the vendor and the vendee have a beneficial interest in the land which either may sell or assign. *Georgia State B. & L. Asso.* v. *Faison,* 114 Ga. 655 (40 S. E. 760). When the purchaser transfers his bond for title, he parts with his beneficial interest in the land, although he is still bound to pay to the vendor the balance of the purchase-money due him. The vendor, after such transfer, retains his beneficial interest in the land and the legal title thereto, subject to the right of the transferee of the vendee, or any subsequnt transferee claiming under the original assignment of the bond for title, to pay the balance of the purchase-money and to have a conveyance made to him. The vendor can sell his interest in the land and convey the title thereto to the purchaser, subject to the rights of such transferee. The vendor sells the land subject to his outstanding bond for title. We see no reason why he can not sell his beneficial interest in the land to his original vendee, subject to the same rights. The purchaser from him will hold the title to the land in trust for such assignee of the vendor's bond for title, and such purchaser would have to make title to the latter on payment

of the balance of the purchase-money due the vendor. When the original vendee parts with his interest in the land by the transfer and assignment of his bond for title, and afterwards has to pay the balance of the purchase-money due his vendor, the ultimate transferee failing and refusing to pay the same, and takes a deed of conveyance from his vendor to himself, he stands in the shoes of such vendor; and he is entitled to any rights which such vendor might have against such transferee. The contention that the payment by the obligee in the bond for title to the obligor therein of the full purchase-money creates a perfect equity in favor of such assignee, and entitles him to a conveyance by the obligor in the bond for title, is not sound either in law or morals. Such payment creates a perfect equity in such obligee, but not in such transferee who does not pay the balance of the purchase-money due the vendor. When the obligee takes such conveyance from the obligor, he takes it subject to the rights of the ultimate transferee, and will be compelled to convey to the latter the land upon payment by him of the amount of the purchase-money which he had to pay to his vendor. To entitle the ultimate transferee of the bond for title, under these circumstances, to a conveyance of the land, he must pay to the vendee such purchase-money. Under such circumstances the vendee takes the place of the vendor, and is entitled to enforce all the rights which the vendor may have against such transferee. The payment by the vendee of the purchase-money in full does not inure to the benefit of such transferee. Such transferee must pay the balance of the purchase-money, to acquire a perfect equity and to entitle him to a conveyance. *Georgia Mills &c. Co.* v. *Clarke,* 112 *Ga.* 253 (37 S. E. 414). This would clearly be true if the vendor had conveyed to one other than the obligee in his bond for title; but we see no good reason why, under the circumstances of this case, he could not convey this land, with the same result, to the obligee in the bond for title, in order that the latter might be protected in the payment by him of the balance of the purchase-money of the land.

2. What are the rights of the vendor to which his vendee is subrogated? The assignee of the vendee is not subject to the obligation of the contract of sale, except upon his option to enforce it by specific performance. *Couch* v. *Crane,* 142 *Ga.* 22 (82 S. E. 459), *Gafford* v. *Twitty,* 154 *Ga.* 682 (115 S. E. 105). It is op-

tional with the assignee, in the absence of an agreement to assume and pay the balance of the purchase-money, as to whether he is to complete the contract. 36 Cyc. 760. If he does not assume and agree to pay the balance of the purchase-money, the vendor can not proceed against him either at law or in equity to recover the same; but if he does agree to assume and pay the balance of the purchase-money, the vendor can proceed in equity against his vendee and such assignee to recover any balance of the purchase-money due. *Morgan* v. *Argard,* 148 *Ga.* 123 (95 S. E. 986). The vendor may sue for the land upon the failure of the purchaser or transferee to pay the purchase-money (*McHan* v. *Stansell,* 39 *Ga.* 197; *Alston* v. *Wingfield,* 53 *Ga.* 18; *Couch* v. *Crane,* supra); or upon failure of the purchaser or transferee to pay the purchase-money, the vendor may sue the purchaser upon the notes given for such purchase-money, reduce them to judgment, file a deed and have it recorded, and have the land levied upon and sold to pay such purchase money (Civil Code (1910), § 6037); or, as the land remains liable for the purchase-money, the vendor may call upon such assignee to pay the balance of the purchase-money, or surrender the land, or have it sold to satisfy the debt. 39 Cyc. 167; Champion v. Brown, 6 Johns. Ch. (N. Y.) 398 (10 Am. D. 343). This remedy is in the nature of a proceeding in rem, and does not seek a personal judgment against the assignee. Its scope is to subject the land to the payment of the purchase money. In Champion *v.* Brown, supra, Chancellor Kent said that the vendor could proceed thus " by virtue of his lien on the land." But it is said that the vendor's equitable lien in Georgia is abolished (Civil Code (1910), § 3373), and that for this reason this remedy does not lie. While the vendor's equitable lien does not now exist in this State, where the vendor sells land, and gives a bond for title conditioned to make title when the purchase-money is paid, the equitable title passes to the vendee charged with the payment of the purchase-money. In such a case the retention of title by the vendor is security for the purchase-money, and in equity is tantamount to a lien. This being so, the original vendor or a substituted vendor can proceed against the subassignee of the former's bond for title to subject the land embraced therein to the payment of the purchase-money. Of course, the vendor can not pursue all of these remedies concurrently in the same action. The first and last of

these remedies extends to the vendee's assignee in possession, or any subsequent assignee claiming under the vendee's original assignment. *Couch* v. *Crane,* supra. The conveyance by the vendor to the vendee of this land put the legal title in the latter, and he stands in the shoes of the vendor. He thus became entitled to enforce at least the first or the last of the above named remedies.

3. The original petition was a complaint for land brought by the original vendee against the ultimate assignees of the bond for title and their tenant in possession. The plaintiff filed an amendment to his petition, containing allegations fully set out in the statement of facts. Under this amendment the plaintiff sought to have the land sold to satisfy the debt due him growing out of the payment of the balance of the purchase-money due on this land. The defendants objected to the allowance of this amendment, on the ground, among others, that it set up no cause of action, and that, if it set up any cause of action, it was a new cause of action. The court overruled these objections and allowed said amendment, and error is assigned upon this ruling. We have already seen that this amendment set up a cause of action. Was the amendment objectionable on the ground that it set up a new cause of action? In other words, can the plaintiff's complaint for land be so amended as to enforce equitable rights against the defendants therein? The defendants had filed an equitable defense. They undertook to set up against plaintiff's action a complete equity. While such defense is available at law, it is nevertheless an equitable defense. When the defendants filed this equitable defense, this ipso facto converted the suit from an action at law into an action in equity, and the plaintiff could assert any counter-equities by an amendment to his petition. Powell on Actions for Land, § 127; *Rust* v. *Woolbright,* 54 *Ga.* 310. It may be that, without such plea, the plaintiff could make this amendment, it being subject to the objection that it set up a new cause of action, and proceed to have this land subjected to the payment of the purchase money due him therefor. In *Oellrich* v. *Georgia Railroad,* 73 *Ga.* 389, the same being a complaint for land, this court held that " the declaration could be amended by alleging that the plaintiff claimed title as security for the indebtedness set up in the deed, and by praying that the verdict should be so moulded as to subject the premises described in the deed attached to the declaration to the payment of

the note set out therein. Such an amendment, if necessary, was merely explanatory, and made clearer the cause of action. It added neither a new cause of action nor a new party." See also *Polhill* v. *Brown*, 84 *Ga.* 338 (10 S. E. 921). In his amendment the plaintiff does not pray for any judgment against the defendants. He simply seeks to have the land sold, to have the purchase-money paid, and the balance, after paying the costs and expenses of the proceeding, paid to the defendants. He undertakes to give to the defendants their equitable rights on easier terms than they could assert them themselves. So we do not think that the court erred in allowing this amendment upon the grounds urged. The amendment set up a cause of action, but not such a new one as would render the amendment illegal.

4. Applying the above principles, the court did not err in admitting evidence, in directing a verdict for the plaintiff, and in rendering the decree in favor of the plaintiff, under the facts of this case.          *Judgment affirmed. All the Justices concur.*