WALDROUP *v.* THE STATE.

No. 14916. JULY 6, 1944. REHEARING DENIED JULY 18, 1944.

*S. M. Ledford* and *Joseph G. Collins,* for plaintiff in error.

*G. Fred Kelley, solicitor-general, Pat Haralson* and *John E. Frankum,* contra.

JENKINS, Presiding Justice. The Court of Appeals has certified to this court the following question: "The Code, § 67-9902, reads: 'Removal, etc., of incumbered property to hinder levy; venue. Any mortgagor, giver of purchase-money lien, lien for rent, or any lien created by contract between the parties, or the holder or possessor of any property under mortgage or liens above

referred to, who shall run off, remove, hide, or in any way dispose of said property under mortgage or lien, so as to hinder, delay, or prevent the levying officer of the county of defendant's bona fide residence from levying on any property covered by mortgage or lien by virtue of the foreclosure of said mortgage or lien, shall be guilty of a misdemeanor. The venue shall be in the county of defendant's bona fide residence where search is made.' Where one holds personal property under a conditional contract of purchase and sale, and where, by the terms of the purchase, the title to the property is retained by the vendor until the purchase-price is paid, is the property, under such facts, covered by a 'mortgage' or any 'lien' specified in the above-quoted Code section, within the meaning of the words 'mortgage' and 'lien' as employed in that section?"

The question will be answered as presented, which does not call for an answer to other questions considered in the brief of counsel, relating to whether a construction of the contract in question when taken in connection with other provisions of the contract would be inconsistent with the reservation of title or qualify its effect as a retention of title to the extent of giving it the effect of a mortgage or other lien to secure the purchase-price.

It is recognized that criminal statutes must be construed strictly, and that, as was said by the Supreme Court of the United States in Viereck v. United States, 318 U. S. 236 (3) (63 Sup. Ct. 561, 87 L. ed. 734): "The unambiguous words of a criminal statute are not to be altered by judicial construction so as to punish one not otherwise within its reach, however deserving of punishment his conduct may seem." Whether the words in the criminal statute, "mortgagor" or "giver of purchase-money lien . . or any lien created by contract between the parties," include within their intent for the purpose of the criminal statute the vendee in a conditional contract of purchase and sale retaining title until the purchase-price is paid, depends upon the intent of the legislature, in the light of the plain and accepted legal significance of the language employed. Are the concepts of the words "title" and "lien" so inconsistent and antagonistic as to preclude the idea that there can be a lien in favor of one who retains the legal title to secure the purchase-money? Able counsel for the plaintiff in error uses this language in his brief: "There is a wide difference between title and a lien. Where one has retained title to personal property,

he has more than a mortgage or lien—he has title. One can not have a mortgage or lien on property he has title to." We are constrained to differ with this view. As is well known, in most jurisdictions even a mortgage carries title, and no one would dispute that a mortgage is a lien. Since a mortgage does not convey title in this State, we have resorted to the employment of an instrument which is almost, if not quite, sui generis in character. A security deed, although conveying the legal title, does so for the purpose of security only, and, upon the satisfaction of the obligation which it is given to secure, is automatically extinguished in effect and can be canceled of record without any reconveyance by the grantee in accordance with the provisions of the Code, § 67-1306. Such being its purpose and effect, does it not necessarily follow that the conveyance of such a legal title for security only constitutes in effect and to all rational, reasonable, and practical purposes nothing but the highest order of a security lien? The same reasoning applies to a bill of sale to secure debt and to a conditional contract of sale reserving title, where the vendor has parted with his equitable title and reserves to himself the legal title merely to secure the payment of the purchase-money. This court, in *Carter* v. *Johnson,* 156 *Ga.* 207 (4), 210 (119 S. E. 22), in dealing with a reservation of title and after noting the abolition of what had been the vendor's equitable lien arising by operation of law, used this language: "The contract of sale remains executory. The vendor retains legal title to the property as his security. Perhaps no direct ruling has been made by this court to that effect, but the plain common sense of such a transaction is that the vendor retains title as his security, and it has been recognized by this court for many years." In *Wylly* v. *Screven,* 98 *Ga.* 213 (2), 215 (25 S. E. 435), this court, having under consideration what indebtedness a security deed covered, said: "It was insisted that this agreement was ineffectual to establish a *lien,* for the reason that it did not describe the property; and upon this ground it was objected to as inadmissible for the purpose for which it was offered. It was also contended that in so far as the original indebtedness was paid, the deed which had been given to secure the same *ceased to be a lien,* and that the *lien* could not be extended by such an agreement as the one in question, so as to operate as security for further indebtedness; and it is complained that the

court erred in refusing to charge the jury to this effect. There is no merit in these contentions. When the new agreement was entered into, the title to the property was still in the creditor, and there was no reason why the parties could not enter into an agreement, which should be binding as between themselves, that the title, though conveyed as security for one debt, should stand as security for another. No particular form is required for an agreement to *constitute a lien*. It is sufficient if it clearly *indicates the intention to create a lien,* the debt to secure which it is given, and the property on which it is to take effect. We think the agreement in question does this. It clearly describes the debt, and states that it is secured by the deed of the party of the second part to the party of the first part 'of date February 1st, 1892, and the note therein described for the sum of $8000.00.' By means of this description the deed referred to could be identified, and by reference to the deed the property which it was intended should stand as security for the debt could be easily ascertained, the property being fully and specifically described therein." (Italics ours.) In *Wells* v. *Kemme,* 145 *Ga.* 17 (88 S. E. 562), this court said: "Where a vendor sold certain land and conveyed to the purchaser the title for the purpose of allowing him to secure a loan of money with which to pay the vendor a part of the purchase-price, and this was done, and afterwards the vendee secured a second loan on the property and paid the proceeds to the vendor, and subsequently the vendee conveyed the same land, *subject to the liens* above referred to, to the vendor for the purpose of securing the balance of the purchase-money, the vendor agreeing to stay action for a named period on fi. fas. from judgments recovered on the purchase-money notes, and the vendee agreeing to deliver certain rent notes as additional security for the debt due the vendor, such conveyance to the vendor was a deed to secure debt; and the case falls within the rule that a grantee can bring ejectment against the grantor for the purpose of recovering possession of the land, subject to the application of the rents and profits to the payment of the debt secured." (Italics ours.) See also *Dunson* v. *Lewis,* 156 *Ga.* 692, 702 (119 S. E. 846); *Wyley Loose Leaf Co.* v. *Bird,* 159 *Ga.* 246 (125 S. E. 496). These cases are quoted from or cited for the purpose of showing that while a bill of sale to secure debt or a security deed or a conditional-sale contract with reservation of

title amounts to something in addition to an ordinary mortgage lien, this court has itself often recognized that such security title also embraces the elements and characteristics of a lien, and has repeatedly designated them as such. Also, the Court of Appeals, in *McIntire* v. *Garmany*, 8 *Ga. App.* 802 (3) (70 S. E. 198), used this language: "The *lien* which inheres and arises by operation of law upon the execution of a deed given to secure a debt is a legal entity distinct from the debt itself. It secures the payment of the debt not only by affording evidence of its existence, but by providing for its payment. Debt and security are not synonymous terms. Where a deed conveying title to real estate has been executed to secure the payment of several distinct debts, *the lien* created by the execution and delivery of the deed is potential to secure the payment of every debt contracted to be secured thereby." (Italics ours.) While it is true, and has been so held (*Macon Savings Bank* v. *Jones Motor Co.*, 168 *Ga.* 805, 149 S. E. 217), that the act of 1921, authorizing the foreclosure of conditional-sales contracts in the same manner as mortgages, did not change the character of the instrument itself, and therefore that the remedy by trover was not thereby rendered inapplicable, this does not seem to adjudicate contrarily the question here presented. The most that this court has ever adjudicated or said, as we construe the authorities (see *Groves* v. *Williams*, 69 *Ga.* 614, 615; *Citizens Bank* v. *Mullis*, 161 *Ga.* 371 (2), 131 S. E. 44), is, that a security deed, a bill of sale to secure debt, or a reservation of title is not *merely* a lien, such as judgments and mortgages, for the reason that it conveys or withholds the legal title, and, consequently, that the remedy by trover is available. This being true, the holder of such legal title is protected in various other ways, as for example against claims for a year's support. Not only is it a lien, but more than that, it transcends the reach and scope of ordinary liens such as judgments and mortgages, in that it gives the creditor all the rights and privileges of ownership in so far, but in so far only, as the protection of the particular debt is concerned. Such title or ownership, however, is not inconsistent with the concept of the word "lien" as we know and understand it, for the one good and sufficient reason that title is held for the purpose of *securing some particular debt,* and this fact necessarily imports, in and of itself, the idea of a lien. Bouvier's Law Dictionary defines "lien"

as "a hold or claim which one person has on the property of another as a security for some debt or charge." That the lien should be clothed with the dignity of ownership in so far as the protection of the particular debt is concerned, does not and can not deprive it of its quality as security. The legislature in conferring the right to foreclose as a mortgage must necessarily have considered that it possessed the character of a lien for the foreclosure to operate on, since it would be an anomaly indeed to speak of foreclosing title, if title in its common sense and not security title was involved. The inherent lien thus created, not being a mortgage, could not, of course, be foreclosed *as such* until legislative authority was given. This seems to have been the entire effect of the ruling in the *Macon Savings Bank* case.

Accordingly, it seems to us that if the phrase in the criminal statute under review, "any mortgagor, giver of purchase-money lien," did not have in mind· a contract of conditional sale with reservation of title whereby the vendor and vendee each agrees that the vendor is to hold the legal title of the property bought until the purchase-money is paid, it had no meaning at all. It can not have had reference to a mortgage, for mortgages are mentioned for themselves. The rule which requires a strict construction of criminal statutes does not mean that the natural, reasonable, and, as has been shown, the accepted meanings of the words, are not to be given effect, or that they shall be disregarded, even though in order to do so it be necessary to treat the rational language employed as meaningless.

In addition to all that has been said, since the language "giver of purchase-money lien," embodied in the criminal statute, can manifestly refer only to contracts of conditional sale with reservation of title, we do not think, even if the legislature, in following our repeated lead, has employed what could be called a misnomer in the use of the word "lien," that, even then, the use of such a misnomer would destroy the plain and express meaning and purpose of the statute in prohibiting the vendee of personal property from running off, removing, hiding, or disposing of the same where the vendor is protected under a conditional-sale agreement. After having penalized such conduct, to the detriment of anyone holding various other forms of liens of lesser dignity, and then having also included what can refer only to a conditional-sale agreement,

it would be stretching strictness of construction beyond all the bounds of reason to strike down the provision itself, even though the statute could be said to have erroneously followed our lead in referring to such a designated security as a lien, when it is of an even higher form of security than the designation implied. The thing itself which the legislature prohibits being perfectly plain and clear, why nullify the plain and expressed intent, even if a misnomer was used in *characterizing* the security, which nevertheless remained plainly *specified*? We answer the question in the *affirmative*.

*All the Justices concur, except Duckworth and Atkinson, JJ., who dissent.*