18600. HENNESSY *v.* WOODRUFF *et al.*

HAWKINS, Justice. Ed J. Hennessy filed, in the Superior Court of Muscogee County, Georgia, his equitable petition against J. W. Woodruff, Sr., The First National Bank of Columbus, W. E. McHugh, William S. Baugh, Louise D. Baugh, and Richard Peebles. The First National Bank of Columbus and J. W. Woodruff, Sr., separately demurred generally to the petition, but the only question now before this court for decision is the judgment of the trial court sustaining the general demurrer of J. W. Woodruff, Sr., and dismissing the petition.

The petition is voluminous, and we shall not attempt to set out the various allegations in detail, but it is clearly shown: that on November 18, 1952, Hennessy, an agent and employee of Woodruff, entered into an agreement with Woodruff, who was the owner of two described vacant lots, whereby the lots would be conveyed by warranty deed to Hennessy, who should obtain plans and specifications from Peebles looking toward the construction of a dwelling house on each lot, and upon receipt of Peebles' estimate of construction costs, Hennessy would make application for FHA commitments for the purpose of determining reasonable value and the amount of insurable loan on each dwelling, and in the event commitments were obtained for amounts sufficiently in excess of Peebles' estimate of construction cost to justify construction of the dwellings, Hennessy should enter into a contract or contracts with Peebles for the construction of a dwelling house on each lot; that, since Peebles would require payment in instalments as construction progressed, Woodruff would pay or advance the necessary funds to meet such instalment payments; that Hennessy should endeavor to sell each house and lot, the prospective purchasers being expected to pay the purchase price in cash or a part in cash and the balance to be

obtained by loans through the use of FHA insurance commitments, and upon such sales being consummated the purchase price, less necessary expenses incurred and less five percent commission to Hennessy, should be delivered to Woodruff. The record is silent as to whether or not this contract was in writing, but it is clear that the parties have seen fit to enter into later written contracts with one another, and with third parties, which completely change the terms of the original contract. On November 26, 1952, Woodruff conveyed the two lots to Hennessy by warranty deeds for a purported consideration of $2,000 each, and on the same date it appears that the original contract was changed when Hennessy executed notes and security deeds obligating himself to pay to Woodruff $2,000 each for the lots in question. When construction on the first house was one-third complete, Woodruff, deviating from the terms of the original contract, instructed Hennessy to execute a promissory note in favor of The First National Bank of Columbus for $2,250, the note to be endorsed by Woodruff, for the purpose of obtaining funds to pay Peebles, which instructions were complied with by Hennessy, this being a departure from the original contract on the part of both parties, which was reduced to writing when the note was signed and Hennessy executed a second security deed to the lot on which the first house was being constructed, and delivered it to Woodruff to secure the payment of $2,250 to the bank. On March 26, 1953, Hennessy notified Woodruff that the construction of the first house was then two-thirds completed and that the second house was one-third completed, whereupon Woodruff again instructed Hennessy to execute a promissory note to The First National Bank of Columbus, this time for $4,500, to be endorsed by Woodruff, obtain the funds to pay Peebles, the contractor, all of which was done, and Hennessy then executed and delivered another security deed to Woodruff to the two lots in question to secure payment of this loan by the bank, this being another departure from the original contract, which was reduced to writing. On or about April 1, 1953, Hennessy's employment as a salaried employee of Woodruff terminated. On April 23, 1953, when the first house had been completed, and the second house had passed the second inspection and was two-thirds completed, Hennessy, knowing that Woodruff had withheld the aforementioned security deeds from record, executed a promissory note for $4,500 in favor of Merchants and Mechanics Bank of Columbus, now by merger The First National Bank of Columbus, obtained this sum, and executed to said bank a security deed conveying the lot upon which the second house was being constructed for the purpose of securing the loan, and paid the funds thus secured over to Peebles, this being still another departure by Hennessy from the original contract, which provided for Woodruff to furnish the money. On May 21, 1953, Woodruff filed for record in the office of the Clerk of the Superior Court of Muscogee County, Georgia, the four security deeds executed and delivered to him by Hennessy. On August 17, 1953, Peebles filed in the office of the Clerk of the Superior Court of Muscogee County, Georgia, his claim of a contractor's lien on the lot upon which the second house was built in the amount of $2,150, representing the balance claimed to be due under his contract with Hennessy.

The prayers of the petition were: (1) that the bill be sanctioned and ordered filed; (2) that Peebles be enjoined from foreclosing his claim of lien; (3) that The First National Bank of Columbus be enjoined from foreclosing its security deed; (4) that the court by appropriate order and decree determine the rights, liabilities, duties, and obligations of each party and require the performance of such duties and obligations so determined; (5) that Woodruff be required to specifically perform his contract with petitioner; (6) that petitioner have judgment against Woodruff for amounts advanced by petitioner and together with sales commissions of five percent of sales price of said lots and dwellings; (7) that the costs of the proceeding be taxed against Woodruff including an amount of $600 as attorney fees for petitioner's attorney for bringing the proceedings; (8) that a copy of the petition and order be served on each defendant; that Peebles and The First National Bank be temporarily restrained from foreclosing their respective instruments; (9) for general relief, and (10) for process.

Woodruff's demurrer was based on the grounds that: (1) no cause of action was set forth; (2) the petition shows on its face that petitioner has a full, adequate, and complete remedy at law; (3) it affirmatively appears that plaintiff's obligations are in writing, and the purpose of the petition is to vary the terms of written instruments; (4) it affirmatively appears that plaintiff can obtain complete relief so far as defendant Woodruff is concerned by simply paying the debts he owes; and (5) it affirmatively appears that plaintiff is in possession of the property described in the petition, and no reason appears why he cannot put prospective purchasers in possession. *Held:*

1. "An existing contract is superseded and discharged whenever the parties subsequently enter upon a valid and inconsistent agreement completely covering the subject-matter embraced by the original contract. . . Such a subsequent agreement, amounting to a substitution of the former contract, may be collected from several different contemporaneous writings which when taken together constitute a new and complete agreement." *Hewlett* v. *Almand*, 25 *Ga. App.* 346 (103 S. E. 173).

2. "Parties may by mutual consent abandon a contract so as to make it not thereafter binding. . . A contract may be rescinded by agreement, although the evidence thereof may be by conduct and not by words." *Shoup* v. *Elliott*, 192 *Ga.* 858, 861 (16 S. E. 2d 857).

3. "Where parties reduce their agreement to writing, all oral negotiations antecedent thereto are merged in the writing, and even though the writing does not express the contract actually made, the parties must stand by it until it is reformed in a proper way by a competent tribunal." *Weaver* v. *Stoner*, 114 *Ga.* 165, 167 (39 S. E. 874). See also *White* v. *Rainwater*, 205 *Ga.* 219, 224 (52 S. E. 2d 838).

4. "A security deed, although conveying the legal title, does so for the purpose of security only, and, upon the satisfaction of the obligation which it is given to secure, is automatically extinguished in effect and can be canceled of record without any reconveyance by the grantee in accordance with the provisions of the Code, § 67-1306." *Waldroup* v. *State*, 198 *Ga.* 144, 146 (30 S. E. 2d 896, 153 A. L. R. 914).

5. "Upon payment of the amount due under the terms of a deed to secure debt, it is the duty of the grantee in such deed to surrender and deliver

it to the grantor with a proper entry showing payment, and the grantor may thereafter have it 'satisfied' of record. A petition seeking to have the above rule complied with by a grantee is based upon a statutory right." *Bank of LaFayette* v. *Giles,* 208 *Ga.* 674 (2) (69 S. E. 2d 78).

6. The petition alleges that Woodruff is causing petitioner to be subjected to personal liability on petitioner's contracts with Peebles, the Baughs, McHugh, and The First National Bank of Columbus. In other paragraphs of the petition it is admitted by petitioner that he entered into contracts with these parties in his own name, without disclosing any agency, and thereby assumed personal liability; and it is further alleged that the Baughs and McHugh stand ready and willing to perform their contracts to purchase the houses and lots in question for $9,500 and $9,250 respectively, upon delivery of unencumbered conveyances. The original contract, by actions of the parties evidenced in writing, has been changed to a sale of the two lots in question by Woodruff to Hennessy for $2,000 each, with the latter assuming all obligations of the original venture and apparently entitled to all profits, if there be any. Since petitioner alleges he is the holder of warranty deeds, he is entitled to sell the property subject to the outstanding security deeds and liens. By the application of a part of the proceeds of one sale the lien of Peebles could have been discharged, and, by the further application of a sufficient amount of the proceeds of the two sales to cover the debts secured, the security deeds would be rendered functus officio. *Baldwin* v. *Atlanta Joint Stock Land Bank,* 189 *Ga.* 607 (7 S. E. 2d 178). It thus appears that the plaintiff, by the payment of the notes secured by the deeds executed by him can do for himself what he asks the court to do for him, and that an appeal to a court of equity is wholly unnecessary.

7. Under the above rulings of law as applied to this case, the petition failed to state a cause of action against Woodruff, and the trial judge did not err in sustaining his general demurrer.

*Judgment affirmed. All the Justices concur.*

Argued June 14, 1954—Decided July 13, 1954.

*John G. Cozart,* for plaintiff in error.

*Powell, Goldstein, Frazer & Murphy, Hatcher, Smith & Stubbs, Dan S. Beeland, Ernest C. Britton,* contra.