41272. BRINKLEY v. THE STATE.
41273. THE STATE v. BRINKLEY et al.
41319. SMITH v. THE STATE.
(322 SE2d 49)

GREGORY, Justice.

Marvin Brinkley and Richard James Smith were convicted of feticide and multiple counts of armed robbery in Fulton Superior Court. They attack their convictions for feticide on the ground the code section, OCGA § 16-5-80, is constitutionally infirm due to vagueness. We disagree and affirm. The State appealed from the order of the trial court setting aside convictions for aggravated assault. As agreed by counsel at oral argument, we do not reach that issue because we affirm the remaining convictions.

The principal issue for decision is whether the feticide statute is vague and therefore constitutes a violation of due process under the Federal and State Constitutions. Brinkley and Smith contend the use of the word "quick" as a description of that time during pregnancy after which the killing of the unborn child in a certain manner violates the statute, is so uncertain and inexact a term as to make enforcement arbitrary.

The evidence presented would have authorized the jury to find that Sheryl Giles was at the Checker Club in Atlanta on July 13, 1983. At the time she was in approximately the sixteenth week of pregnancy. She was standing outside the club talking to two other people when the defendants arrived wearing masks. One defendant had a shotgun in his possession and the other two pistols. Sheryl Giles attempted to hide from the defendants but they ordered her and her companions inside the club. Giles told the defendants she was pregnant and begged them not to hurt her on that account. Inside, the defendants ordered the three, and others who were there, to lie on the

floor. The defendant with the shotgun kept guard while the other defendant took money from those present. Sheryl Giles was uncomfortable lying face down because of her pregnancy so she changed her position slightly. When she did so the defendant fired the shotgun, striking her in the abdomen injuring her severely and causing the death of the unborn child.

This was the second pregnancy of Sheryl Giles. Her first child was seven years old at the time. She was familiar with the feeling of the movement of a child within her body during pregnancy. She felt movement of this unborn child on occasions including the night before the shooting. The medical experts do not know a definite time when movement of an unborn child is possible, but it happens usually around the sixteenth week and at times as early as the tenth week of pregnancy.

1. The defendants contend the Georgia feticide statute under which they were convicted is unconstitutional because it violates the void for vagueness doctrine, a part of due process required by the Fourteenth Amendment to the Federal Constitution and by Art. I, Sec. I, Par. I of the Georgia Constitution. As recently stated by the United States Supreme Court, the void for vagueness doctrine, "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, ___ U. S. ___, 51 L. W. 4532, 4533 (1983). We have written that due process requires, ". . . that an individual be informed as to what actions a governmental authority prohibits with such clarity that he is not forced to speculate at the meaning of the law." *Armstrong v. Mayor &c. of the City of Savannah*, 250 Ga. 121, 123 (296 SE2d 690) (1982). The feticide code section provides:

"OCGA § 16-5-80. Feticide; penalty.

(a) A person commits the offense of feticide if he willfully kills an unborn child so far developed as to be ordinarily called 'quick' by any injury to the mother of such child, which would be murder if it resulted in the death of such mother.

(b) A person convicted of the offense of feticide shall be punished by imprisonment for life. (Cits.)."

The defendants point to the word "quick" and say it is vague because there is no legal or medical definition which pinpoints the time in the development of an embryo when it becomes quick, thus leaving the matter to the arbitrary decision of police, prosecutors, juries and judges.

While the particular enactment of the feticide statute under which defendants were convicted occurred only two years ago, Ga. Laws 1982, p. 2499, a feticide statute in virtually the same language

has existed for a very long time.

Since there was no feticide provision in the Code of 1868 it appears the first enactment in Georgia was in 1876.[1] This statute was obviously based in part on Lord Ellenborough's Act. 43 Geo. III. c. 58 (1803).[2] That Act provided penalties for any person who, by administering substances or using instruments caused or intended to cause a woman to miscarry. The penalties were greater if the woman was "quick with child" at the time than if there had been no quickening. In 1811, a defendant indicted under this Act contended he should receive the lesser penalty because the woman testified she had not felt the child move within her before defendant's action, hence the child was not "quick." The "medical men" differed in their opinion as to when quickening occurs but all agreed the common understanding of the term was when the woman has "herself felt the child alive and quick within her. . . ." The court adopted that meaning and the defendant prevailed. Rex v. Phillips, 3 Campbell 73, 170 Eng. Rep. 1310 (1811). Lord Ellenborough's Act had substantial impact on legislation in this country. See Roe v. Wade, 410 U. S. 113, 136 (93 SC 705, 35 LE2d 147) (1973). As long ago as 1845 a Massachusetts court considered Lord Ellenborough's Act and Rex v. Phillips, supra, and declared, "This distinction, between a woman being pregnant and being quick with child, whatever may be the physical theory upon which it was originally founded, is well known and recognized in the law." Commonwealth v. Parker, 9 Metcalf 263, 43 American Decisions 396 (1845). This court considered Rex v. Phillips, supra, and held that

---

[1] "That from and after the passage of this Act, the wilful killing of an unborn child, so far developed as to be ordinarily called 'quick,' by any injury to the mother of such child, which would be murder if it resulted in the death of such mother, shall be guilty of a felony, and punishable by death or imprisonment for life, as the jury trying the case may recommend.

"That every person who shall administer to any woman pregnant with a child, any medicine, drug, or substance whatever, or shall use or employ any instrument or other means, with intent thereby to destroy such child, unless the same shall have been necessary to preserve the life of such mother, or shall have been advised by two physicians to be necessary for such purpose, shall, in case the death of such child or mother be thereby produced, be declared guilty of an assault with intent to murder.

"That any person who shall wilfully administer to any pregnant woman any medicine, drug or substance, or anything whatever, or shall employ any instrument or means whatever, with intent thereby to procure the miscarriage or abortion of any such woman, unless the same shall have been necessary to preserve the life of such woman, or shall have been advised by two physicians to be necessary for that purpose, shall upon conviction, be punished as prescribed in section 4310 of the Revised Code of Georgia." Ga. Laws 1876, p. 113.

[2] The act deals with a number of crimes relating to shooting, stabbing and arson. It does not contain the feticide provision in Sec. I of our Act of 1876, but it does contain the wrongful miscarriage provisions of Sec. II and Sec. III. The difference in the provisions turns on whether the woman is "quick with child." Sections II and III of our Act of 1876 used the terms "pregnant with child" as equivalent to "quick" and the term "pregnant" where quickening has not occurred. See *Summerlin v. State*, 150 Ga. 173 (103 SE 461) (1920).

"child" used in our 1876 Act, "means an unborn child so far developed as to be ordinarily quick, so far developed as to move or stir in the mother's womb. . . ." *Sullivan v. State*, 121 Ga. 183, 187 (48 SE 949) (1904). We followed this same definition sixteen years later. *Summerlin v. State*, 150 Ga. 173, 176 (103 SE 461) (1920).

The Code of 1933 contained the Act of 1876 essentially unchanged. Georgia Code Annotated § 26-1101 was the assault with intent to murder provision. (Sec. II of the Act); § 26-1102 was the abortion provision. (Sec. III of the Act); and § 26-1103 was the feticide provision. (Sec. I of the Act). While the 1933 Code was in force, the Court of Appeals affirmed a trial court decision in a prenatal civil action which relied in part on the rationale of the feticide code section. *Porter v. Lassiter*, 91 Ga. App. 712, 715 (87 SE2d 100) (1955). There, it was held that a child is quick when it is capable of moving in its mother's womb. Thus a child may be quick even before movement is felt by the mother so long as it is capable of movement. See *Shirley v. Bacon*, 154 Ga. App. 203 (267 SE2d 809) (1980).

In 1968 the Criminal Code was completely revised. The feticide section was repealed and not re-enacted at that time. Ga. Laws 1968, p. 1249 at p. 1338; see *Ranger v. State*, 249 Ga. 315, 316 (290 SE2d 63) (1982). The revision did enact an abortion section carrying a one to ten-year penalty without regard to whether the child had quickened. Ga. Laws 1968, at p. 1277. There were certain medical exceptions allowed. It was these which came under attack and were partially struck down in Doe v. Bolton, 410 U. S. 179 (93 SC 739, 35 LE2d 201) (1973), the companion case to Roe v. Wade, supra.

Thus, while the 1982 Act was the first feticide statute since the revision of 1968, it was nothing more than a continuation of a criminal provision which existed for many years in this state and in turn rested on English law going back to 1803. During this time the courts have defined the term "quick" by taking the meaning commonly understood among the people even though the "medicine men" may approach the subject in more technical terms. The statute informs all of what actions the state prohibits with sufficient definiteness that ordinary people can understand. The trial court correctly put it in the charge to the jury in this case that "quick" is that ". . . time when the fetus is able to move in its mother's womb."

We note that the feticide code section uses the words "unborn child" to refer to the fetus. But, whether that term is "fetus" or "unborn child" the section clearly deals with the unborn and would just as clearly cover the entire period of pregnancy but for the limitation to the period from and after which the unborn can ordinarily be called "quick." There is no unconstitutional vagueness in the description of the unborn as the "unborn child." We are not troubled here with the common law issue of whether one not yet born can be the

victim of homicide. See 40 ALR3rd 444, § 2.

Nothing in Roe v. Wade, 410 U. S. 113 (1973) nor Doe v. Bolton, 410 U. S. 179 (1973), supra, is in conflict with our holding here. There the court dealt with a balance between a woman's right of privacy affording her the choice to decide the question of abortion of her child as against the state's interest in safeguarding health, maintaining medical standards, and in protecting potential life. In striking that balance the court focused on the trimesters of pregnancy. But here we deal with the interest of the state in protecting both the mother and the fetus from the intentional wrongdoing of a third party who can claim no right for his actions.

2. Brinkley contends the trial court erred in refusing to grant a severance of his trial from that of Smith because the evidence against Smith was overwhelming while that against him was slight. We find ample evidence against both to support their convictions under Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Smith contends the trial court erred in refusing to sever his trial from that of Brinkley because evidence against Brinkley indicated flight by him to the State of Alabama. Considering the strength of the evidence against each defendant we find no abuse of discretion by the trial court. OCGA § 17-8-4. *Monroe v. State,* 250 Ga. 30, 35 (295 SE2d 512) (1982); *Dixon v. State,* 243 Ga. 46, 47 (252 SE2d 431) (1979).

3. The trial court refused to allow the defendants to question the prospective jurors on voir dire concerning their views regarding abortion even though over 200 pages in the record are devoted to voir dire. This was a matter within the discretion of the trial judge and we find no abuse. *Waters v. State,* 248 Ga. 355, 363 (283 SE2d 238) (1981).

4. We have examined the remaining enumerations of error and find them to be without merit.

*Judgment affirmed in Case No. 41272 and Case No. 41319. The cross appeal in Case No. 41273 is not reached. All the Justices concur.*

DECIDED OCTOBER 31, 1984 —
REHEARING DENIED NOVEMBER 16, 1984 IN CASE NO. 41319 AND
REHEARING DISMISSED IN CASE NO. 41272.

*Hester & Hester, Frank B. Hester,* for Brinkley.

*Lewis R. Slaton, District Attorney, Benjamin H. Oehlert III, Assistant District Attorney, Michael J. Bowers, Attorney General,* for State.

*L. David Wolfe,* for Smith.