Richard James SMITH, Sr.,
Petitioner-Appellant,

v.

Lanson NEWSOME, Warden and Michael Bowers, Respondents-Appellees.

No. 86–8325.

United States Court of Appeals,
Eleventh Circuit.

April 17, 1987.

Before VANCE and KRAVITCH, Circuit Judges, and BROWN *, Senior Circuit Judge.

VANCE, Circuit Judge:

Richard James Smith, Sr. appeals a denial of his application for habeas corpus relief. In a joint trial with a co-defendant held in the Superior Court of Fulton County, Georgia, Smith was convicted of aggravated assault, four counts of armed robbery and violation of Georgia's feticide statute. Smith's convictions were affirmed by the Supreme Court of Georgia in *Brinkley v. State,* 253 Ga. 541, 322 S.E.2d 49 (1984), where the court specifically considered the constitutionality of the feticide statute and the trial court's refusal to grant a severance of parties. We affirm the district court's denial of habeas corpus relief.

Smith argues that the Georgia feticide statute, O.C.G.A. § 16–5–80,[1] is unconstitutionally vague. *See, e.g., Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Specifically, Smith contends that in deciding whether the statute has been violated, a jury must arbitrarily determine and apply each member's understanding of the term "quick." We disagree. The case law of Georgia has long adopted the common law understanding of "quick": when the fetus is so far developed as to be capable of movement within the mother's womb. *Sullivan v. State,* 121 Ga. 520, 48 S.E. 949 (1904). Medical and lay testimony at trial indicated that the mother of the unborn child in question was far enough along in her pregnancy for the fetus to be "quick," and in addition the mother herself testified that she had felt and recognized the unborn child move within her prior to its destruction.

L. David Wolfe, L. David Wolfe & Associates, Atlanta, Ga., for petitioner-appellant.

Eddie Snelling, Jr., Law Dept., State of Georgia, Paula K. Smith, Atlanta, Ga., for respondents-appellees.

* Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. Section 16–5–80 reads in pertinent part:

A person commits the offense of feticide if he willfully kills an unborn child so far developed as to be ordinarily call "quick" by any injury to the mother of such child, which would be murder if it resulted in the death of such mother.

■ Smith also contends that the feticide statute is unconstitutional because there is no unlawful taking of a human life, and because the statute contradicts the Supreme Court decision in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). The former contention is frivolous. There is no constitutional impediment unique to the prohibition of conduct that falls short of the taking of a human life. The latter contention is equally without merit. The proposition that Smith relies upon in *Roe v. Wade*—that an unborn child is not a "person" within the meaning of the Fourteenth Amendment—is simply immaterial in the present context to whether a state can prohibit the destruction of a fetus.[2]

■ Smith also argues that the final clause of the feticide statute, which defines the offense as one resulting from "an injury to the mother of such child, which would be murder if it resulted in the death of such mother," renders the statute unconstitutionally vague. Rather than adding vagueness, this clause contributes specificity to the offense. A jury must make a factual finding that defendant's actions, had they resulted in death to the mother, would have constituted murder. Juries have been deciding murder cases for centuries and are clearly competent to make such a finding.

■ Smith also contends that the statute violates equal protection because it creates two classifications that are arbitrary and capricious. Smith notes that O.C.G.A. § 16–12–140 punishes the offense of criminal abortion with imprisonment for not less than one year nor more than ten years, while the Georgia feticide statute requires a life sentence. Criminal abortion is the unlawful administering of "any medicine, drugs, or other substance whatever to any woman or ... use [of] any instrument or other means whatever upon any woman

with intent to produce a miscarriage or abortion." Smith argues that the offense perpetrated by the individual performing a criminal abortion would be no different than feticide if at the time of the act the unborn child was determined to be quick. Smith however overlooks two important distinctions between the two statutes. First, the criminal abortion statute does not require the actual destruction of a fetus. Secondly, the feticide statute requires an act that would constitute murder if resulting in the death of the mother. This requirement changes the entire character of the offense. States ordinarily distinguish offenses and vary the severity of sentences according to the degree of mental culpability inherent in the offenses. Retribution is a legitimate goal of the criminal law. The distinction between the sentences required by the Georgia feticide statute and the Georgia criminal abortion statute are thus rationally related to legitimate governmental purposes.[3]

■ Smith's contention that the trial court should have severed his case from that of his co-defendant is also without merit. Smith asserts that a much stronger case against his co-defendant unduly prejudiced his own trial. The district court found, under the standard in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), that there was sufficient evidence against both defendants to support their convictions. *See also Brinkley v. State*, 253 Ga. 541, 322 S.E.2d 49, 53 (1984). Contrary to Smith's contention the evidence against him was not slight. He was positively identified by a witness as the man who shot the mother. The trial court specifically found that Smith and his co-defendant were acting in concert and that evidence against one would be admissible against the other. Under these circumstances, Smith has not shown that he suffered prejudice amounting to a denial of

---

**2.** The constitutional limitations upon a state's right to prohibit the destruction of a fetus come into play when the state's interest conflicts with certain constitutional interests of the mother. *See Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). A mother's interests are in

no way infringed upon by the statute in question.

**3.** Since the statutory scheme does not invoke any suspect classification, it need only be rationally related to legitimate governmental purposes.

due process. *See Demps v. Wainwright,* 666 F.2d 224, 227 (5th Cir. Unit B), *cert. denied,* 459 U.S. 844, 103 S.Ct. 98, 74 L.Ed.2d 89 (1982).

AFFIRMED.