A92A0233, A92A0415. THE STATE v. LUSTER; and vice versa.
(419 SE2d 32)

Sognier, Chief Judge.
Darla Michelle Luster was charged in a two count indictment with violating the Georgia Controlled Substances Act, OCGA § 16-13-20 et seq. Count One charged Luster with possessing cocaine between January 1, 1991 and March 3, 1991. Count Two charged that between January 1, 1991 and March 3, 1991, Luster "did unlawfully deliver and distribute . . . cocaine . . . to Tiffany Luster," Luster's daughter, who was born on March 3, 1991. The trial court granted Luster's motion to dismiss Count Two of the indictment, and in Case No. A92A0233 the State appeals from the dismissal of that count. In Case No. A92A0415, Luster appeals from the trial court's denial of her motion for discharge and acquittal on Count One of the indictment. The two appeals have been consolidated for review.

The record reveals that on the dates alleged in the indictment, Luster was pregnant. On March 4, 1991, one day after Tiffany's birth, a sample of Tiffany's urine was taken and tested. The sample proved positive for cocaine metabolites and, based on those test results, Luster was charged both with possession of cocaine, OCGA § 16-13-30 (a), which is punishable by imprisonment for not less than two nor more than 15 years, and with delivering and distributing cocaine to Tiffany, OCGA § 16-13-30 (b), which is punishable by imprisonment for not less than five nor more than 30 years.

1. The trial court granted Luster's motion to dismiss Count Two of the indictment on the basis that OCGA § 16-13-30 (b) was not intended to encompass the transmission of cocaine metabolites to a fetus that occurs when a pregnant woman ingests cocaine.[1] The State contends the trial court erred by granting Luster's motion because, contrary to the trial court's finding, Luster's conduct was within the contemplation of OCGA § 16-13-30 (b), which provides that "it is unlawful for any person to . . . deliver [or] distribute . . . any controlled substance." We do not agree, and we affirm the trial court's order

---

[1] Cocaine introduced into the human body results in cocaine metabolites being formed in the body fluids.

dismissing Count Two of the indictment.

(a) It is well established that "criminal statutes must be strictly construed against the state and liberally in favor of human liberty. [Cit.]" *Knight v. State*, 243 Ga. 770, 775 (2) (257 SE2d 182) (1979). Thus, "no [person] shall be held criminally responsible for conduct which he [or she] could not reasonably understand to be proscribed," *United States v. Harriss,* 347 U. S. 612, 617 (74 SC 808, 98 LE 989) (1954), and one of the purposes of the Criminal Code of Georgia is "[t]o give fair warning of the nature of the conduct forbidden and the sentence authorized upon conviction." OCGA § 16-1-2 (2). We look, therefore, to the language of the statute under which Luster was charged to determine whether she reasonably should have known that she could be prosecuted for delivering or distributing cocaine to her fetus if she ingested the controlled substance while pregnant.

(i) OCGA § 16-13-21 (7) provides that " '[d]eliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." OCGA § 16-13-21 (11) provides that " '[d]istribute' means to deliver a controlled substance, other than by administering or dispensing it." Since only licensed practitioners or others not involved here may "administer" or "dispense" controlled drugs, see OCGA § 16-13-21 (23), the terms "deliver" and "distribute" as used in the statute are identical for all practical purposes.

OCGA § 16-13-21 (20) defines " '[p]erson' " as "an individual, corporation, government, or governmental subdivision or agency, business trust, estate, trust, partnership, or association, or any other legal entity." Under Georgia law, the word "person" in a criminal statute may not be construed to include a fetus unless the legislature has expressly included it, since at common law a fetus was not considered a person. *Billingsley v. State,* 183 Ga. App. 850, 851 (1) (360 SE2d 451) (1987). Our legislature has indicated by specific language when it intends to include unborn children within the contemplation of a criminal statute. See, e.g., OCGA § 16-5-80 (feticide). Although it is true, as asserted by the State, that Tiffany eventually became a "living, breathing person" when she was born, at the time any transfer of cocaine metabolites could have taken place from Luster upon which an indictment could be based, Tiffany was not a "person" within the meaning of the statute. After she became a person for legal purposes, it was physically impossible for the transfer to have taken place.

(ii) "[I]t is an elementary rule of statutory construction that, absent clear evidence to the contrary, words should be assigned their ordinary, logical, and common meaning. [Cits.]" *Curlee v. Mock Enterprises*, 173 Ga. App. 594, 600 (327 SE2d 736) (1985). Since the statutory definitions are not sufficiently enlightening, we must assign to the terms "deliver" and "distribute" their ordinary meanings. The

only applicable definitions supplied by Webster's New International Dictionary (2nd ed.) for "deliver" are "[t]o give or transfer; to yield possession or control of; to part with (to); to make or hand over; to make delivery of." The same dictionary's only applicable definition of "distribute" is "to deal out." The "ordinary, logical, and common" meanings of these terms encompass only transfers that take place between one person and another person, outside the bodies of the persons involved. This interpretation is in accord with prior judicial construction, as reported cases of criminal prosecutions pursuant to OCGA § 16-13-30 (b) for "delivering" or "distributing" controlled substances have all involved the transfer of controlled substances to another person. E.g., *Jordan v. State*, 177 Ga. App. 637 (1) (340 SE2d 269) (1986) (participant in sale of cocaine to undercover agent properly convicted of delivering); *Manning v. State*, 170 Ga. App. 721-722 (1) (318 SE2d 191) (1984) (conviction of student at high school for distributing marijuana authorized when evidence showed he solicited another student to sell drug to other students).

It is well established that statutes should be read according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operation, see *Earth Mgmt. v. Heard County*, 248 Ga. 442, 444 (283 SE2d 455) (1981), and this principle is particularly compelling when interpreting criminal statutes. See generally *P. L. A. v. State*, 172 Ga. App. 820, 821 (1) (324 SE2d 781) (1984). We conclude, therefore, that because the common, ordinary meaning of the plain and unambiguous language of the statute shows it does not apply to the facts sub judice, Luster could not reasonably have known that she would be prosecuted for "delivering" or "distributing" cocaine to her unborn child if she ingested cocaine while pregnant, and thus she did not receive the "fair warning" mandated by OCGA § 16-1-2 (2). " 'The unambiguous words of a criminal statute are not to be altered by judicial construction so as to punish one not otherwise within its reach.' " *Waldroup v. State*, 198 Ga. 144, 145 (30 SE2d 896) (1944). Accordingly, the trial court correctly refused to place upon the statute the strained construction urged by the State that would impermissibly have expanded its reach.

(b) Even assuming, arguendo, however, that OCGA § 16-13-30 (b) is ambiguous and susceptible of interpretation, the cardinal rule of statutory construction is that "the courts shall look diligently for the intention of the General Assembly." OCGA § 1-3-1 (a). See *Proo v. State*, 192 Ga. App. 169-170 (384 SE2d 197) (1989). In our attempt to discern whether the legislature intended the inclusion of transmission of a controlled substance to a fetus by a pregnant woman in the terms used in OCGA § 16-13-30 (b), we are aided by the knowledge that in 1990 the legislature defeated two bills which would have amended the

Georgia Controlled Substances Act to create a new crime of distributing a controlled substance to an unborn child, and that in 1991 H.B. 276 was passed, emphasizing the importance of providing drug treatment on a priority basis for pregnant women. See Ga. L. 1991, p. 977; OCGA §§ 26-5-5 (10); 26-5-20. The 1991 legislation followed recommendations of the Council on Maternal and Infant Health (a body created by statute to advise the General Assembly and other state agencies on issues pertaining to maternal and infant health, see Ga. L. 1972, p. 635; Ga. L. 1974, p. 269) and the General Assembly's Joint Conference on Children of Cocaine and Substance Abuse (convened on November 1, 1990) that the State de-emphasize and declare a moratorium on legislation seeking to prosecute drug dependent pregnant women and instead approach addiction as a disease and develop and fund appropriate and adequate treatment facilities and services for that population. See Public Policy Recommendations for Georgia: Perinatal Substance Abuse, A Report of A Meeting of the Council on Maternal and Infant Health, July 17, 1990; Georgia General Assembly's Joint Conference on Children of Cocaine and Substance Abuse, Summary of Delegate Recommendations.

" 'It is a well-established rule of construction that the meaning of one statute may be arrived at by a consideration of a subsequent act of the legislature on the same subject.' " *Price v. State*, 76 Ga. App. 105, 110 (3) (45 SE2d 96) (1947). By attempting initially to pass legislation *creating* the new crime of distributing controlled substances to unborn children, the legislature signaled unequivocally that it had not intended to include such activity in the "delivery" and "distribution" already prohibited under OCGA § 16-13-30 (b). Further, by enacting legislation treating addiction during pregnancy as a health problem, the legislature indicated its view that addiction during pregnancy is a disease and signaled its preference for treatment over prosecution, which preference is overwhelmingly in accord with the opinions of local and national medical experts.[2] Accordingly, given this evidence that the legislature did not intend to include transmission of controlled substances to fetuses in the conduct prohibited by OCGA § 16-13-30 (b), even assuming the statute is ambiguous we find no error

---

[2] This court has had the benefit of briefs of, inter alia, amici curiae American Medical Association, Medical Association of Georgia, American Association of Addiction Medicine, the American Public Health Association, American Nurses Association, Coalition on Alcohol and Drug Dependent Women, National Council on Alcoholism and Drug Dependence, Women's Policy Group, the National Black Women's Health Project, as well as the American Civil Liberties Union, the Legal Action Center, State Representative Ralph David Abernathy III (sponsor of H.B. 276 and chairman of the Joint Conference on Children of Cocaine and Substance Abuse) and State Representative Mable Thomas, all of which support the affirmance of the trial court's ruling. See also Note, Pregnancy Police: The Health Policy and Legal Implications of Punishing Pregnant Women for Harm to their Fetuses, 16 N.Y.U. Rev. of Law & Social Change 277 (1987-88).

in the trial court's dismissal of Count Two of the indictment.

2. In Case No. A92A0415, Luster appeals from the trial court's denial of her motion for discharge and acquittal made on the ground that the State had failed to try her within the time prescribed by statute after she filed a demand for trial. OCGA § 17-7-170 (a) provides in pertinent part that "[a]ny person against whom a true bill of indictment . . . is filed with the clerk for an offense not affecting his life may enter a demand for trial at the court term at which the indictment . . . is filed or at the next succeeding regular court term thereafter." Subsection (b) provides in pertinent part that "[i]f the person is not tried when the demand is made or at the next succeeding regular court term thereafter, provided at both court terms there were juries impaneled and qualified to try him, he shall be absolutely discharged and acquitted of the offense charged in the indictment or accusation." No question exists that Luster was not tried within the prescribed time and that juries were impaneled and qualified to try her. Nonetheless, we find the trial court properly denied Luster's motion, and we affirm.

Because both counts of the indictment charged Luster with crimes arising from the same conduct, and the crimes were known to the prosecutor at the time of commencing the prosecution and were within the jurisdiction of the same court, see OCGA § 16-1-7 (b), if the State had proceeded with the prosecution of Count One of the indictment while appealing the trial court's ruling as to Count Two, eventual prosecution of Count Two (should the State have been successful on appeal) would have been barred. *State v. Brittain,* 147 Ga. App. 626 (249 SE2d 679) (1978). Accord *State v. Stowe,* 167 Ga. App. 65, 66-67 (2) (306 SE2d 663) (1983); *State v. Martin,* 173 Ga. App. 370 (326 SE2d 558) (1985). Thus, were we to accept Luster's contention that OCGA § 17-7-170 mandated trial of Count One under these circumstances, the result would be to render meaningless the State's right pursuant to OCGA § 5-7-1 (1) to appeal from the dismissal of Count Two since the State would be barred by OCGA § 16-1-7 (b) from ever proceeding against Luster on that appealed count. *Brittain,* supra. We do not construe statutes to render any provision meaningless, see generally *In re Irvin,* 171 Ga. App. 794, 796 (321 SE2d 119) (1984), rev'd in part on other grounds, 254 Ga. 251 (328 SE2d 215) (1985), and thus we reject Luster's argument that a speedy trial demand under OCGA § 17-7-170 nullifies the State's right under OCGA § 5-7-1 (1) to appeal from an order dismissing "any count" of an indictment.

We hold, therefore, that despite the fact that Luster's motion to dismiss was made as to Count Two, the grant of her motion coupled with the State's appeal thereof caused the motion to be viewed as an affirmative action on Luster's part resulting in waiver of the demand

for trial and tolling the running of the period in OCGA § 17-7-170 (b) during which Luster was required to be brought to trial on Count One. See generally *State v. Waters*, 170 Ga. App. 505, 508-509 (3) (317 SE2d 614) (1984). Accordingly, the trial court did not err by denying Luster's motion for discharge and acquittal on Count One.

*Judgments affirmed, Cooper, J., concurs. McMurray, P. J., concurs in Case No. A92A0415 and concurs in the judgment only in Case No. A92A0233.*

DECIDED APRIL 23, 1992 —
RECONSIDERATION DENIED MAY 5, 1992 —

*Thomas J. Charron, District Attorney, Debra H. Bernes, Nancy I. Jordan, Bruce D. Hornbuckle, Assistant District Attorneys*, for appellant.

*Charles M. Taylor II*, for appellee.

*Gerald R. Weber, Laughlin McDonald, Neil Bradley, Kathleen L. Wilde*, amici curiae.