## A98A0820. HILLMAN v. THE STATE.
(503 SE2d 610)

ELDRIDGE, Judge.

The defendant, Jacquelyn Aretha Hillman, appeals from the Walton County Superior Court's denial of her motion to quash an indictment charging her with a violation of Georgia's criminal abortion statute. After finding that this statute does not apply to the defendant's conduct, we reverse.

In May 1997, the defendant was indicted under OCGA § 16-12-140 for allegedly using a handgun to shoot herself in the abdomen "with intent to produce a miscarriage and an abortion of her unborn child . . . resulting in the death of her unborn child[.]" At the time of the incident, the defendant was an eighteen-year-old single parent and approximately eight months pregnant.

1. In her first enumeration, the defendant asserts that she cannot be prosecuted under OCGA § 16-12-140 (a) for allegedly performing a criminal abortion on herself. After examining the plain language of the statute, we agree.

(a) OCGA § 16-12-140 (a) reads as follows: "Except as otherwise provided in Code Section 16-12-141,[1] a person commits the offense of criminal abortion when he[2] administers any medicine, drugs, or other substance whatever *to any woman* or when he uses any instrument or other means whatever *upon any woman* with intent to produce a miscarriage or abortion." (Emphasis supplied.) This statute is written in the third person, clearly indicating that at least two actors must be involved. "It is axiomatic that[,] if an enactment is plain and unambiguous, we must give its words their plain and ordinary meaning, except for words which are terms of art or have a particular meaning in a specific context. OCGA § 1-3-1 (b)." *City of Buchanan v. Pope*, 222 Ga. App. 716, 717 (476 SE2d 53) (1996). By its plain meaning, OCGA § 16-12-140 does not criminalize a pregnant woman's actions in securing an abortion, regardless of the means utilized. See OCGA § 1-3-1 (b).

Further, " '[i]t has always been the law that criminal statutes must be strictly construed against the [S]tate.' *McAllister v. State*, 122 Ga. 744 (50 SE 921) (1905)." *Bankston v. State*, 258 Ga. 188, 190 (367 SE2d 36) (1988). "The unambiguous words of a criminal statute are not to be altered by judicial construction so as to punish one not otherwise within its reach. *Waldroup v. State*, 198 Ga. 144, 145 (30 SE2d 896) (1944)." (Punctuation omitted.) *State v. Luster*, 204 Ga.

---

[1] OCGA § 16-12-141 provides for the circumstances under which legal abortions must be performed.

[2] Under the rules of statutory construction, "[t]he masculine gender includes the feminine and the neuter." OCGA § 1-3-1 (d) (4).

App. 156, 158 (419 SE2d 32) (1992); see also *Bouie v. City of Columbia*, 378 U. S. 347 (84 SC 1697, 12 LE2d 894) (1964).

Accordingly, OCGA § 16-12-140 is not applicable, and the indictment issued thereon is defective as a matter of law. The trial court's refusal to quash the indictment was error and must be reversed.

(b) This conclusion is further bolstered by an examination of the development of Georgia's prohibition against criminal abortion. The state's first criminal abortion statute was enacted in 1876.[3] *Brinkley v. State*, 253 Ga. 541, 543 (322 SE2d 49) (1984). This statute has been repeatedly reenacted by the legislature in substantially the same form.[4] In construing subsequent amendments to this statute, Georgia's appellate courts have consistently ruled that the pregnant woman upon whom the abortion procedure was performed cannot be indicted for this offense. In *Gullatt v. State*, 14 Ga. App. 53 (9) (80 SE 340) (1913) (construing Penal Code 1910, § 81),[5] this Court held that "[t]he female upon whom a criminal abortion has been performed is not an accomplice with the perpetrator of the offense, as she can not be indicted for that offense." This Court subsequently construed an amended version of the statute, GCA § 26-1201,[6] and reiterated that "a female is not guilty of a crime by her participation in an abortion operation." *Gaines v. Wolcott*, 119 Ga. App. 313, 315 (167 SE2d 366), aff'd, *Wolcott v. Gaines*, 225 Ga. 373 (169 SE2d 165) (1969).

Although the legislature subsequently amended the criminal abortion statute[7] to allow for legal abortions following the United States Supreme Court's rulings in *Roe v. Wade*[8] and *Doe v. Bolton*,[9] such amendment did not change prior judicial constructions regarding a pregnant woman's culpability under the statute. See *Dortch v.*

---

[3] " 'That any person who shall wilfully administer to any pregnant woman any medicine, drug or substance, or anything whatever, or shall employ any instrument or means whatever with intent thereby to procure the miscarriage or abortion of any such woman, unless the same shall have been necessary to preserve the life of such woman, or shall have been advised by two physicians to be necessary for that purpose, shall upon conviction, be punished as prescribed in section 4310 of the Revised Code of Georgia.' Ga. Laws 1876, p. 113." *Brinkley v. State*, supra at 543, n. 1.

[4] See Ga. L. 1876, p. 113, § 2; Code 1882, § 4337b; Penal Code 1895, § 81; Penal Code 1910, § 81; Code 1933, § 26-1101; Code 1933, §§ 26-1201; 26-1203, enacted by Ga. L. 1968, p. 1249, § 1; Code 1933, § 26-1204, enacted by Ga. L. 1973, p. 635, § 1.

[5] Penal Code 1910, § 81 read as follows: "Any person who shall willfully administer to any pregnant woman any medicine, drug, or substance, or anything whatever, or shall employ any instrument or means whatever, with intent thereby to produce the miscarriage or abortion of such woman, . . . shall be guilty of a misdemeanor."

[6] GCA § 26-1201 read as follows: "Except [when medically necessary,] a person commits criminal abortion when he administers any medicine, drug or other substance whatever to any woman or when he uses any instrument or other means whatever upon any woman with intent to produce a miscarriage or abortion."

[7] Ga. L. 1973, pp. 635-637.

[8] 410 U. S. 113 (93 SC 705, 35 LE2d 147) (1973).

[9] 410 U. S. 179 (93 SC 739, 35 LE2d 201) (1973).

*Atlanta Journal,* 261 Ga. 350 (405 SE2d 43) (1991); see also OCGA § 16-12-141; *Brinkley v. State,* supra at 544. "From the addition of words[,] it may be presumed that the legislature intended some change in the existing law; but it is also presumed that the legislature did not intend to effect a greater change than is clearly apparent either by express declaration or by necessary implication." (Citations and punctuation omitted.) *State v. Peters,* 213 Ga. App. 352, 355-356 (444 SE2d 609) (1994).

The current statutory language is virtually identical to that of the previous statutes, with the exception of changes regarding gender references and other insignificant grammatical differences. This indicates that "the General Assembly accepted the ruling in *Gullatt v. State,* supra, . . . as a correct interpretation of the statute." *Wolcott v. Gaines,* supra at 374. "[I]t is well settled in this jurisdiction that all statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it; that they are to be construed in connection and in harmony with the existing law; and that their meaning and effect will be determined in connection, not only with the common law and the Constitution, but also with reference to other statutes and the decisions of the courts. [Cits.]" *Buice v. Dixon,* 223 Ga. 645, 647 (157 SE2d 481) (1967); see also *Asberry v. State,* 220 Ga. App. 40 (467 SE2d 225) (1996); *State v. Camp,* 189 Ga. 209, 210 (2) (6 SE2d 299) (1939).

Therefore, the legislative history indicates that, despite numerous opportunities, the General Assembly has refused to criminalize a pregnant woman's acts in securing an illegal abortion. This Court cannot and will not usurp the function of the legislature by judicially enlarging an existing criminal statute. See *Dunn v. United States,* 442 U. S. 100, 112 (99 SC 2190, 60 LE2d 743) (1979); *Bouie v. City of Columbia,* supra at 353-354; *Mitchell v. State,* 142 Ga. App. 802, 803 (237 SE2d 243) (1977).

(c) Even so, the State argues that this Court should extend the criminal abortion statute to encompass the defendant's acts because of the egregious conduct for which she is charged, i.e., intentionally inflicting a gunshot wound to a near-term fetus in order to produce an abortion.[10] However, the potential ramifications of the State's proposed overbroad construction of the statute certainly give pause.

Under such construction, any woman who suffers a post-viability miscarriage could be subject to scrutiny regarding whether or not she intentionally acted to cause the miscarriage. A woman would be at risk of a criminal indictment for virtually any perceived self-

---

[10] Notably, the defendant has indicated that the gunshot wound was not intentionally inflicted but was, instead, the result of a botched suicide attempt.

destructive behavior during her pregnancy which could cause a late term miscarriage, to wit: smoking or drinking heavily; using illegal drugs or abusing legal medications; driving while under the influence of drugs or alcohol; or any other dangerous or reckless conduct. See generally *State v. Luster*, supra. Taken to its extreme, prohibitions during pregnancy could also include the failure to act, such as the failure to secure adequate prenatal medical care, and overzealous behavior, such as excessive exercising or dieting. Clearly, the legal truism "hard cases make bad law" applies here.

To compound the problem, the State argues that the issue of whether a woman who has participated in this risky behavior *intended* to cause her subsequent miscarriage would be a jury question. In other words, a pregnant woman who suffers a late term miscarriage could be subjected to criminal investigation, indictment, and prosecution long before a jury is asked to determine whether she *intentionally* did anything to *cause* the miscarriage. This is a patently unjust approach.

Further, the State's argument fails to address obvious due process concerns, i.e., whether the statute (as construed by the State) gives notice that certain behavior, which may otherwise be legal, is forbidden during pregnancy. See OCGA § 16-1-2 (2); see also *Grayned v. City of Rockford*, 408 U. S. 104, 108 (92 SC 2294, 33 LE2d 222) (1972); *State v. Luster*, supra at 157; *Mitchell v. State*, supra at 803.

Accordingly, we reject the State's construction and overbroad application of this statute.

(d) Finally, this Court finds no merit in the State's assertion that prior judicial constructions of the criminal abortion statutes do not apply in this case. The State points out that, in *Gullatt v. State*, supra, and *Gaines v. Wolcott*, supra, the pregnant women were not principal actors but were, instead, alleged to be accessories to the crime, while the defendant in this case was the principal actor. It is undisputed that no one else was involved in this incident.

However, the State of Georgia makes no distinction between an accessory before the act and a principal actor, treating both as parties to the crime and assigning equal culpability. OCGA §§ 16-2-20 (a); 16-2-21; see also *Purvis v. State*, 208 Ga. App. 653, 654-655 (433 SE2d 58) (1993). Therefore, regardless of whether the pregnant woman acts alone or with assistance, she cannot be charged under OCGA § 16-12-140, as that statute is specifically directed to prevent the conduct of persons *other* than the pregnant woman.

2. The defendant's second enumeration is rendered moot by our decision in Division 1, supra.

*Judgment reversed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED JUNE 3, 1998.

*Joseph S. Rhymer, James C. Bonner, Jr.,* for appellant.
*Alan A. Cook, District Attorney,* for appellee.