### A08A0699. HILL v. THE STATE.
(664 SE2d 781)

PHIPPS, Judge.

An indictment was returned charging Alexis Hill with concealing the death of another person by hindering the discovery of whether her infant child was unlawfully killed. Hill demurred to the indictment on the ground that the state had no proof that the child was born alive and ever had an independent and separate existence from her. The trial court denied the demurrer and, following a bench trial, found Hill guilty as charged.

In this appeal of her conviction, Hill challenges the sufficiency of the evidence. She correctly argues that an unborn fetus was not considered a person at common law and is not considered a person under strictly construed penal statutes, and that the evidence was insufficient to show that her child had an existence independent and separate from her. Because the state proved that, due to its gestational age, Hill gave birth to a viable child (i.e., a child capable of independent existence outside the mother's womb before its birth regardless of whether it was stillborn) and then concealed the child's death, we find the evidence sufficient and affirm.

Under OCGA § 16-10-31, "[a] person who, by concealing the death of any other person, hinders a discovery of whether or not such person was unlawfully killed is guilty of a felony. . . ." A series of cases beginning with *Hall v. State*[1] and ending with *Peters v. Hosp. Auth. of Elbert County*[2] have examined issues concerning the status of the unborn, the newly born, and the stillborn under various civil and criminal statutes.

*Hall* recognized that "[i]n order to convict for the murder of a newly born baby, it is incumbent upon the State to prove that the child was born alive and had an independent and separate existence from its mother."[3]

In *Billingsley v. State*,[4] the defendant was convicted of vehicular homicide based on evidence that she had caused the death of another person, i.e., an unborn child, while driving under the influence of

---

[1] 243 Ga. 207 (253 SE2d 160) (1979).
[2] 265 Ga. 487 (458 SE2d 628) (1995).
[3] 243 Ga. at 209 (3) (citations and punctuation omitted).
[4] 183 Ga. App. 850 (360 SE2d 451) (1987).

alcohol. *Billingsley* held although an unborn fetus may be included within the definition of "person" in personal injury or wrongful death civil actions, an unborn child could not be considered a person within the meaning of the vehicular homicide statute.[5] *Billingsley* gave essentially two reasons for this holding. First, a penal statute must be construed strictly in favor of the accused. Second, an unborn fetus was not considered a "person" at common law.[6]

In *State v. Hammett*,[7] the defendant was charged with vehicular homicide after she lost control of her car and collided with a vehicle in which Ferguson, a 35-week pregnant woman, was a passenger. After the collision, Ferguson gave birth to a child who lived for approximately 11 hours before dying from injuries received in the collision. Distinguishing *Billingsley*, *Hammett* held that under Georgia law and at common law a person who injures a pregnant woman so that her fetus, though born alive, subsequently dies by reason of the injuries inflicted on it while still in the mother's uterus, can be convicted of murder or a lesser homicide.

Thus, in *Life v. State*,[8] the defendant's convictions for murder and concealing the death of another were affirmed where the evidence showed that she had killed her infant son shortly after his birth and then concealed the body.[9]

*State v. Luster*[10] held that a pregnant mother who ingested cocaine and thereby introduced that substance into the bodily fluids of her unborn child was not chargeable with violating a criminal statute that prohibited the unlawful delivery or distribution of cocaine to another person.[11] Citing *Billingsley*, *Luster* recognized that "[u]nder Georgia law, the word 'person' in a criminal statute may not be construed to include a fetus unless the legislature has expressly included it, since at common law a fetus was not considered a person."[12]

As an example of a Georgia criminal statute that by specific language includes fetuses or unborn children within its contemplation, *Luster* cited our feticide statute, OCGA § 16-5-80 (a). When *Luster* was decided, that statute provided, "A person commits the offense of feticide if he willfully kills an unborn child so far developed as to be ordinarily called 'quick' by any injury to the mother of such

---

[5] Id. at 851-852 (1).
[6] Id., citing *Roe v. Wade*, 410 U. S. 113 (93 SC 705, 35 LE2d 147) (1973).
[7] 192 Ga. App. 224 (384 SE2d 220) (1989).
[8] 261 Ga. 709 (410 SE2d 421) (1991).
[9] Id. at 709 (1).
[10] 204 Ga. App. 156 (419 SE2d 32) (1992).
[11] Id. at 156-157 (1) (a).
[12] Id. at 157 (1) (a) (i).

child, which would be murder if it resulted in the death of such mother."[13] *Brinkley v. State*[14] rejected a challenge to the constitutionality of this statute based on vagueness of the word "quick." *Brinkley* adopted the common historical understanding of "quick" as that "time when the fetus is able to move in its mother's womb."[15] Therefore, "[t]he feticide statute [did] not view the covered fetus, that is, a 'quick' fetus, as a 'person' but rather as an 'unborn child.' "[16]

*Peters* was a suit by parents, on behalf of a stillborn child, to recover damages for, among other things, prenatal injuries and pain and suffering to the fetus. Because, as held in *Billingsley*, an unborn fetus is not a person, *Peters* held that the parents could not recover on the child's behalf even though, as recognized in *Peters*, Georgia law provides a cause of action for prenatal injuries to children born alive and does not abate personal injury actions by the death of the injured party.[17] The Court in *Peters* reasoned, "In order for the stillborn to have a cause of action, 'person,' as used in OCGA § 51-1-9 [authorizing every 'person' against whom a tort is committed to recover therefor], must be construed to include the unborn."[18]

In this case, Hill claimed that she got into a tub of warm water when she was pregnant, lost consciousness, and awoke to find that she had given birth to a stillborn child who was floating in the bath water. Afraid to tell anyone, she put the child in a plastic bag and buried the child in her back yard. Hill's revelation to her brother of what had happened led to discovery of the child's body several months later. Through an autopsy, it was determined that at the time of its birth the child had reached approximately 34 to 37 weeks in gestation. Although the Georgia Crime Laboratory described the fetus as essentially full term, it could not be determined due to the decomposition of the body if the child had been born alive with an independent and separate existence from Hill or was stillborn. Nor could the cause or manner of death be determined. It did appear, however, that the child had no deformities or congenital defects that would have prevented her from being born alive and sustaining life after birth.

[13] *Brinkley v. State*, 253 Ga. 541, 542 (1) (322 SE2d 49) (1984).

[14] Id.

[15] Id. at 544 (punctuation omitted).

[16] *Jackson v. State*, 208 Ga. App. 391, 396 (1) (430 SE2d 781) (1993) (Beasley, P. J., concurring in part and dissenting in part). In 2006, OCGA § 16-5-80 was amended to define "unborn child" for the purposes of the feticide statute as meaning "a member of the species homo sapiens at any stage of development who is carried in the womb." OCGA § 16-5-80 (a). The statute's reference to "quick" was omitted. OCGA § 16-5-80 (b).

[17] 265 Ga. at 488 (1).

[18] Id.

This evidence authorized the court to find that Hill gave birth to a child capable of sustaining an independent and separate existence from her, i.e., a viable child. We hold that even if such a child is stillborn, the child still becomes a person within the meaning of OCGA § 16-10-31 at birth. Because the child in this case was born, our holding certainly does not require us to construe the term "person," as used in OCGA § 16-10-31, to include the unborn, which was the problem in *Peters*. And a contrary construction of OCGA § 16-10-31 would lead to the absurd result that no provable crime whatsoever has been committed here, given the effectiveness of Hill's concealment of whether her child — who was unquestionably born — died prenatally or neonatally. "The judiciary has the duty to reject a construction of a statute which will result in unreasonable consequences or absurd results not contemplated by the legislature."[19] The evidence is thus sufficient to sustain Hill's conviction of concealing the child's death.

*Judgment affirmed. Barnes, C. J., and Johnson, P. J., concur.*

DECIDED JUNE 30, 2008 — 

*Craig S. Mathis*, for appellant.
*Cecilia M. Cooper, District Attorney, David E. Perry, Assistant District Attorney*, for appellee.

---

[19] *Haugen v. Henry County*, 277 Ga. 743, 746 (2) (594 SE2d 324) (2004) (citation omitted).